923 P.2d 1169

State of New Mexico, ex rel., Children, Youth and Families Department, In the Matter of Sara R., a child, and Concerning Joe R., Respondent.

STATE of New Mexico, ex rel., CHILDREN, YOUTH AND FAMILIES DEPARTMENT, Petitioner–Appellee,

v.

JOE R., Respondent–Appellant.

No. 16519.

Court of Appeals of New Mexico.

May 30, 1996.

Certiorari Granted July 9, 1996.

Diane Garrity, Kathryn A. Hughes, Roy E. Stephenson, Children's Court Attorneys, Angela L. Adams, Chief Children's Court Attorney, Children, Youth and Families Department, Santa Fe, for Appellee.

Sheryl L. Saavedra, Timothy J. Cusack, Cusack, Jaramillo & Associates, P.C., Roswell, for Appellant.

Michael H. Stone, Sanders, Bruin, Coll & Worley, P.A., Roswell, Guardian ad Litem.

## OPINION

FLORES, Judge.

1. Respondent–Appellant (Father) appeals from the children's court's order grant-ing summary judgment which terminated Father's parental rights. The points on appeal all relate to the central issue of whether the children's court improperly determined that Father's act of murdering Mother established neglect, as a matter of law, thereby justifying the termination of Father's parental rights. We reverse on the basis that termination of Father's parental rights as a matter of law by summary judgment procedure was not appropriate and therefore remand for a hearing on the merits.

## FACTS

2. On May 11, 1994 Father was convicted of first degree murder and false imprisonment of Mother. Father was sentenced to life in prison plus eighteen months and will not be eligible for parole for approximately thirty years. On June 23, 1994 the Children, Youth & Families Department (Department) filed a motion for termination of parental rights. Thereafter, on September 26, 1994, the Department filed a motion for summary judgment. Referring to Father's murder of Mother and resulting incarceration, the Department alleged the child was neglected and that, as a matter of law, Father's parental rights should be terminated.

3. On May 2, 1995 the children's court entered an order granting summary judgment in favor of the Department. The order granting summary judgment recites the children's court's findings that Father's murder of Mother proves a failure by Father to appreciate the impact of his actions on the emotional and physical well-being of the child; that the child has been neglected and that the causes and conditions which led to the abuse are unlikely to change in the foreseeable future; and that it is in the child's best interests that Father's parental rights be terminated. In essence, the children's court ruled that Father's murder of Mother and subsequent incarceration constituted neglect per se, thereby justifying termination of his parental rights. It is from this order

granting summary judgment that Father appeals.[1]

*DISCUSSION*

■ 4. The grounds for termination of parental rights must be proved by clear and convincing evidence. NMSA 1978, § 32A–4–29(J) (Repl.Pamp.1995); *In re Adoption of Doe*, 98 N.M. 340, 345, 648 P.2d 798, 803 (Ct.App.), *cert. denied*, 98 N.M. 336, 648 P.2d 794 (1982) (*Doe I*). Thus, a children's court's decision terminating parental rights will be upheld so long as the grounds for termination are supported by clear and convincing evidence and so long as the children's court applied the proper rule of law. *In re C.P.*, 103 N.M. 617, 621, 711 P.2d 894, 898 (Ct.App.1985), *cert. denied* (N.M. Dec. 6, 1985).

■ 5. A neglected child includes "a child: (1) who has been abandoned by the child's parent ...; (2) who is without proper parental care ... necessary for the child's well-being because of the faults or habits of the child's parent ...; [or] (4) whose parent ... is unable to discharge his responsibilities to and for the child because of incarceration." NMSA 1978, § 32A–4–2(C)(1), (2), (4) (Repl. Pamp.1995); *In re Adoption of Doe*, 99 N.M. 278, 281, 657 P.2d 134, 137 (Ct.App.1982), *cert. denied*, 99 N.M. 358, 658 P.2d 433 (1983) (*Doe II*). The two-part test for abandonment requires proof of parental conduct that implies a conscious disregard of parental obligation and evidence that the parent-child relationship was destroyed by the parental conduct. *In re Adoption of J.J.B.*, 119 N.M. 638, 648, 894 P.2d 994, 1004, *cert. denied*, —— U.S. ——, 116 S.Ct. 168, 133 L.Ed.2d 110 (1995); *In re C.P.*, 103 N.M. at 621, 711 P.2d at 898.

■ 6. The Department contends, and the children's court ruled, that Father's mur-

der of Mother constitutes neglect of the child as a matter of law in that Father's action permanently deprived the child of her Mother and demonstrated a complete failure by Father to respect child's developmental and emotional needs. We disagree that Father's murder of Mother and subsequent incarceration, standing alone, establishes neglect as a matter of law for terminating Father's parental rights. *Cf. In re S.B.*, 742 P.2d 935, 939 (Colo.Ct.App.1987) (indicates that father's murder of child's mother was, as a matter of law, grounds for termination of parental rights), *cert. denied*, 754 P.2d 1177 (1988).

7. We note that the children's court, prior to the termination proceedings, had determined in earlier custody proceedings that the child was neglected and abused. Subsequently, in conjunction with the separate termination proceedings, the children's court found the child to be neglected with the causes and conditions which led to the abuse unlikely to change. The State apparently argued below that the children's court could properly take judicial notice of its prior findings in conjunction with the custody proceedings that the child was neglected. It is unclear, however, from the children's court's March 23, 1995 letter-decision and the May 2, 1995 order granting summary judgment whether the children's court took judicial notice of the prior proceedings to determine that the child was neglected and that such neglect was unlikely to change.

■ 8. Nevertheless, we hold that under the circumstances of this case, it would be improper for the children's court to rely on its prior finding of neglect for purposes of the termination proceedings. First, custody arrangements are an entirely different matter than termination proceedings. Father's motivation to not contest the custody

---

1. We are unable to tell from the record to what extent the alternative issue of abandonment was argued by the Department and relied upon by the judge below (although Father's counsel clearly discussed the issue at the hearing on the motion for summary judgment). However, because an appellee may argue any grounds for affirmance on appeal and we will uphold the lower court's decision if it is legally mandated, regardless if the

court's rationale was incorrect, *Bruch v. CNA Ins. Co.*, 117 N.M. 211, 212, 870 P.2d 749, 750 (1994), and because Father discussed the issue in the hearing as if it had been raised, *cf. State v. Ramzy*, 116 N.M. 748, 751, 867 P.2d 418, 421 (Ct.App.1993), *cert. denied*, 116 N.M. 801, 867 P.2d 1183 (1994), we address the issue of abandonment as well as that of incarceration.

arrangements would most likely be quite different from his motivation to fight the termination of his parental rights. Father understandably may have determined that, given his incarceration, the custody arrangement was in his child's best interests. Further, although the children's court also had previously found that any efforts to reunite the child with Father would be futile, this finding was made in the context of a custody hearing. As stated in Father's response to summary judgment, the child had expressed a desire to see Father. Father should have been afforded an evidentiary hearing to address, among other questions, whether this desire was such that the parent-child relationship was not destroyed. In short, the stakes are higher in termination proceedings. Second, it is unclear whether the prior neglect determination made in the custody hearings was made as a matter of law, based on the criminal acts and incarceration underlying Father's conviction. As set forth in *Doe II,* 99 N.M. at 282, 657 P.2d at 138, the termination of parental rights involves questions of fact, not matter of law conclusions. Therefore, to take judicial notice in a termination proceeding of a previous determination (not involving the termination of parental rights) that was made as a matter of law would be improper.

9. Although Father does not dispute the facts of his conviction or subsequent incarceration, he does dispute the legality of relying on the foregoing evidence alone to support a determination that his parental rights should be terminated as a matter of law. We recognize that Section 32A-4-2(C)(4), provides that a neglected child consists of a child "whose parent . . . is unable to discharge his responsibilities to and for the child because of incarceration . . .," and that NMSA 1978, Section 32A-4-28(B)(2) (Repl. Pamp.1995), states that parental rights shall be terminated when a child has been neglected and the causes and conditions of the abuse and neglect are unlikely to change in the foreseeable future. However, we do not construe these statutory provisions to mean that

incarceration alone constitutes neglect as a matter of law, thus resulting in the termination of parental rights. Further, we believe that the dissent does not acknowledge that the record is unclear as to whether the children's court focused too much on the word incarceration in Section 32A-4-2(C)(4) without properly focusing on the first part of the section, or, more specifically, whether Father is *"unable to discharge his responsibilities to and for the child* because of incarceration." (Emphasis added.) Circumstances may be present, for example, in which a parent is incarcerated, yet is still able to maintain a parental relationship with a child.

10. Because of parents' fundamental liberty interests in the care, custody, and management of their children, *see Santosky v. Kramer,* 455 U.S. 745, 753, 102 S.Ct. 1388, 1394, 71 L.Ed.2d 599 (1982), this Court is loathe to terminate a parent's parental rights without first affording the parent an evidentiary hearing. For this reason, we rely on New Mexico case law that discourages per se termination as a matter of law and recognizes that the termination of parental rights often involves unique questions of fact. *See Doe II,* 99 N.M. at 282, 657 P.2d at 138.

11. Accordingly, we view incarceration of a parent, even when resulting from an act of murder, as only one factor to be considered in a determination of whether abandonment has occurred. *Id.* ("Abandonment rests upon incarceration coupled with other factors such as parental neglect, lack of affection shown toward the child, failure to contact the child, financially support the child if able to do so, as well as disregard for the general welfare of the child."); *see also In re C.P.,* 103 N.M. at 621, 711 P.2d at 898. For example, in *Doe II,* similar to the facts of this case, the father murdered the child's mother, as well as shooting the grandmother. 99 N.M. at 279, 657 P.2d at 135. Unlike the present case, however, in *Doe II,* the father's parental rights were not terminated as a matter of law. Instead, a hearing was held wherein the parties presented evidence on

their behalf, and the children's court entered findings. The children's court in *Doe II* found that "[t]he murder of the mother by the father struck at the heart of the family. The conviction proved the father's inability to appreciate the impact of his actions on the child and to respect the emotional and physical needs of the child." *Id.* at 282, 657 P.2d at 138. Contrary to the present case, the foregoing finding was not made as a matter of law, based on the father's murder of the mother, but instead was made after an evidentiary hearing.

12. Although we hold that Father's murder of Mother is not per se grounds for termination, we note that the nature of the underlying crime is, of course, a relevant and important factor to be considered by the children's court on remand. *See, e.g., In re Adoption of Children by L.A.S.*, 134 N.J. 127, 631 A.2d 928, 935 (1993) (the underlying crime giving rise to incarceration is a factor bearing on parental capacity to provide proper care and to avoid harm to the child); *see also Wray v. Lenderman*, 640 S.W.2d 68, 71 (Tex.Ct.App.1982) (the parent's questioned conduct need not be directed toward child nor cause child physical harm to qualify as conduct which endangers the emotional well-being of the child).

13. Other factors for the children's court to consider on remand include the kinds of contacts and communications between the parent and child that can be achieved; the nature of the counselling, advice, and instruction that the parent can give the child; the effects of the attempted continuation of the parental relationship on the stability and security of the child's life; and the impact of the relationship on the child's psychological and emotional well-being. *See In re Adoption of Children by L.A.S.*, 631 A.2d at 936; *see also In re B.H.M.*, 799 P.2d 1090, 1095 (Mont.1990) (following a hearing, termination of parental rights of mother who was incarcerated for her part in murder of children's father was justified; the trial court considered the needs and whole situation of the children, the history of violence by the mother, and the long term confinement of the

mother); *In re Sego*, 82 Wash.2d 736, 513 P.2d 831, 833 (1973) (en banc) (where father murdered the mother: "[i]t is necessary to consider each case on its own facts.... [A] parent's inability to perform his parental obligations because of imprisonment, the nature of the crime committed, as well as the person against whom the criminal act was perpetrated are all relevant to the issue of parental fitness and child welfare, as [is] the parent's conduct prior to imprisonment and during the period of incarceration.") (citations omitted); *In re Adoption of J.*, 73 N.J. 68, 372 A.2d 607 (1977) (per curiam) (the supreme court reversed the court of appeals' decision of *In re Adoption of J.*, 139 N.J.Super. 533, 354 A.2d 662 (App.Div.1976), and adopted the position of the dissenting judge in that case for the proposition that a court must look beyond the crime itself and examine the nature of the parent's ongoing relationship with the child).

14. We emphasize that by holding that a factual inquiry is necessary in the present case, we are not holding that a summary judgment proceeding may never be an appropriate procedure to terminate parental rights. To the contrary, where there are no underlying issues of fact in dispute, summary judgment may be appropriate. *See State ex rel. Children, Youth, & Families Dep't In re T.C.*, 118 N.M. 352, 353, 881 P.2d 712, 713 (Ct.App.1994); *see also Roth v. Thompson*, 113 N.M. 331, 334, 825 P.2d 1241, 1244 (1992) ("Summary judgment is proper if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law."). As discussed above, however, the children's court disregarded the proper factual inquiries in the present case and instead terminated Father's rights as a matter of law based on his murder of Mother and subsequent incarceration. The focus in this case should not be whether Father's parental rights should be terminated as a matter of law, but whether the results of a proper factual inquiry are such that Father's parental rights should be terminated. In this regard, we note the State's failure to comply with SCRA 1986, 1–056(D)(2) (Repl.1992),

which requires that a memorandum in support of summary judgment be filed setting forth "a concise statement of all the material facts as to which the moving party contends no genuine issue exists." In matters regarding the termination of parental rights, we emphasize the importance of compliance with the applicable rules. Thus, in the present case, we are not holding summary judgment can never be an appropriate vehicle by which to terminate parental rights. Rather, we are holding that, pursuant to *Doe II*, the proper factual inquiries must be made and, as noted above, the requirements set forth in SCRA 1–056 must be scrupulously followed.

15. Lastly, we address Father's argument that the issue of whether or not his parental rights should be terminated is premature in that his criminal conviction is pending on appeal.[2] Father contends that in the event his conviction was overturned on appeal, he would have been "unequivocally deprived of the opportunity to resume his parental role if his parental rights are terminated prematurely" and termination of his parental rights would not afford him the "protection and deference he deserves as a natural parent." In the present case, prior to our Supreme Court's decision, there was no indication whether reversal of Father's murder conviction was likely. To the contrary, Father's attorney at the summary judgment hearing acknowledged that reversal of the murder conviction was unlikely. Thus, under the facts of this case, we would have disagreed with Father's position and, instead, held that the child's interest in some degree of permanency, stability, security, and long-term planning was paramount. *See, e.g., In re T.T.*, 845 P.2d 539, 541 (Colo.Ct.App.1992) (mother's parental rights could be terminated prior to determination of her appeal of her criminal conviction), *cert. denied* (Feb. 16, 1993). Father has been convicted for the murder of the child's Mother. Under such circumstances, any deference accorded to Father is lessened. Moreover, in circumstances such as the present, we would be unwilling to speculate whether or not a stay of termination proceedings would or would not result in the child leaving her present environment. Nor can we say that a delay of any adoption proceedings would not hinder a feeling of stability and bonding by child in her present caretakers. Accordingly, we would have declined to stay the termination proceedings.

*CONCLUSION*

16. For the reasons set forth herein, we reverse and remand for a hearing on the merits addressing whether Father's parental rights should be terminated. Father's request for attorney fees on appeal is denied.

17. **IT IS SO ORDERED.**

APODACA, C.J., concurs.

DONNELLY, J., dissents.

DONNELLY, Judge (dissenting).

18. I respectfully dissent. I would uphold the children's court's order granting summary judgment and terminating Defendant's parental rights subsequent to his murder of the child's mother.

19. Defendant was convicted of false imprisonment and the first-degree murder of his former wife following a jury trial. Based on his convictions, the district court sentenced Defendant to serve a term of life imprisonment, plus eighteen months. Under this sentence, Defendant is not eligible for parole for a minimum of thirty years. *See* NMSA 1978, § 31–21–10(A) (Repl.Pamp. 1994). On April 29, 1996, our Supreme Court affirmed Defendant's convictions and sentences for first-degree murder and false imprisonment. *State v. Ross*, 122 N.M. 15, 919 P.2d 1080 (1996).

20. Because Defendant was incarcerated and the mother died from gunshot wounds

---

2. Following submission of the parties' briefs and oral argument, our Supreme Court affirmed Father's convictions for first degree murder and false imprisonment of Mother. *See State v. Ross,* 122 N.M. 15, 919 P.2d 1080 (1996). This would appear to make this issue moot. However, our discussion here is relevant to the extent Father files a motion for rehearing or any other action in connection with his conviction.

inflicted by Defendant, the child, Sara R., six and one-half years old, was placed in the custody of the Children, Youth and Families Department (the Department). The Department filed a petition to have the child declared abused and neglected, and subsequently filed a motion to terminate Defendant's parental rights. On November 29, 1993, following an evidentiary hearing, the children's court found that the child was "an *abused and neglected child as defined in the Children's Code*" (emphasis added), that the Department had utilized reasonable efforts to attempt to reunify the child with Defendant, and that because of his incarceration Defendant is unable to care for the child. The standard of review to support a finding of abuse or neglect as prescribed in NMSA 1978, Section 32A–4–20(H) (Repl.Pamp.1995) is proof by "clear and convincing evidence." *Id.; see also Reuben & Elizabeth O. v. Department of Human Servs.,* 104 N.M. 644, 647–48, 725 P.2d 844, 847–48 (Ct.App.), *cert. denied,* 104 N.M. 84, 717 P.2d 60 (1986). Defendant did not appeal the November 29, 1993, judgment and disposition or contest the findings underlying that disposition.

21. Thereafter, on June 23, 1994, in the same cause, the Department filed a motion to terminate Defendant's parental rights under the Abuse and Neglect Act, NMSA 1978, Sections 32A–4–1 to 32A–4–33 (Repl. Pamp.1995), alleging, inter alia, that the child was *neglected.* Approximately three months later, the Department filed a motion for summary judgment requesting that Defendant's parental rights be terminated on the grounds of neglect. Among other things, the Department's motion for summary judgment stated, as uncontested facts, (1) that Defendant killed the child's mother; (2) that Defendant has been convicted of first-degree murder and false imprisonment, and Defendant has been sentenced to serve a term of life imprisonment in the state penitentiary, plus eighteen months, and would not be eligible for parole for at least thirty years; and (3) that any reasonable efforts to reunite the child with Defendant would be futile.

22. Although Defendant's response to the motion for summary judgment asserts that summary judgment should be denied because an appeal of his criminal conviction was still pending, that neglect could not be proven by clear and convincing evidence, that a factual issue exists as to whether the parent-child bond has disintegrated, and that the Department's motion did not follow SCRA 1986, 1–056(D) (Repl.1992), the children's court had previously found the child to be neglected, and Defendant did not dispute he had been convicted of killing the child's mother, his lengthy sentence of incarceration arising out of his criminal convictions, or that any efforts by the Department to reunite the child with Defendant would be futile. The basic facts relied upon by the Department and set forth in the motion for summary judgment essentially reiterated the findings of fact that had been previously adopted by the children's court in its November 29, 1993, judgment finding that the child was abused and neglected. Under these circumstances, the children's court could properly conclude as a matter of law that Defendant's criminal acts have effectively deprived the child of the care and support of both parents, that Defendant cannot care for the child, and that Sara R. will have long since reached adulthood before Defendant is eligible for release.

23. On May 2, 1995, the children's court granted the motion for summary judgment. Under the record herein, the children's court properly granted summary judgment terminating Defendant's parental rights. *See In re T.C.,* 118 N.M. 352, 353, 881 P.2d 712, 713 (Ct.App.1994) (holding that summary judgment may be granted in cases seeking termination of parental rights); *see also In re Adoption of Doe,* 99 N.M. 278, 282, 657 P.2d 134, 138 (Ct.App.1982) (murder of infant's mother by father, and father's subsequent incarceration and inability to care for and protect child held to be grounds for termination of parental rights), *cert. denied,* 99 N.M. 358, 658 P.2d 433 (1983).

24. As discussed above, prior to the filing of the motion for summary judgment, the children's court had previously determined in its November 29, 1993, judgment and disposition that the child was an "abused and ne-

glected child." Defendant does not dispute the facts of his convictions or that the sentences resulting therefrom will extend beyond the child's minority and, indeed, well beyond. Moreover, Section 32A–4–2(C) of the Abuse and Neglect Act specifies five alternative ways a child can be found to be neglected. The fourth alternative, Section 32A–4–2(C)(4), expressly provides that a neglected child means a child "whose parent, guardian or custodian is unable to discharge his responsibilities to and for the child because of *incarceration* . . . ." (Emphasis added.) Section 32A–4–28(B)(2) states, in pertinent part:

B. The court shall terminate parental rights with respect to a child when:

. . . . .

(2) the child has been a *neglected* or abused child as defined in the Abuse and Neglect Act . . . and the court finds that the conditions and causes of the neglect and abuse are unlikely to change in the foreseeable future despite reasonable efforts by the department . . . to assist the parent in adjusting the conditions that render the parent unable to properly care for the child. . . . [Emphasis added.]

25. Here, Defendant's response to the motion for summary judgment, paragraph 4, admits that his convictions for first-degree murder and false imprisonment were pending before the appellate court and the fact of his sentence and incarceration for the killing of the child's mother. Based on the prior findings of the children's court, together with the undisputed facts set forth in the motion for summary judgment, the court could properly determine as a matter of law that under the provisions of Sections 32A–4–2(C)(4) and 32A–4–28(B)(2), the child was neglected by reason of Defendant's murder of the child's mother and Defendant's lengthy sentence of incarceration which resulted in his inability to care for the child, and that Defendant's ongoing neglect of the child has been fully established by the requisite standard of proof.

26. The majority opinion contends that Defendant should have been afforded an evidentiary hearing to factually resolve Defendant's contention that the "parent-child relationship was not destroyed." I believe the majority misreads the applicable statute. When the basis for termination of parental rights is grounded on an allegation of neglect under Section 32A–4–28(B)(2) stemming from a parent's long-term incarceration and his consequent inability to properly care for the child, disintegration of the parent-child relationship and presumptive abandonment are not at issue. As shown in the record, the children's court previously determined that Defendant was indigent, and that the causes of his neglect of the child are unlikely to change. Defendant's response to the motion for summary judgment made no showing that the basis for the children's court's finding of child neglect will or is likely to change in the foreseeable future.

27. Although I agree with the majority that incarceration alone does not in every case establish neglect as a matter of law and that the issue of whether an individual's parental rights should be subject to termination should be carefully determined on a case-by-case basis, under the undisputed facts existing here, the children's court properly granted summary judgment, thereby terminating Defendant's parental rights. I would affirm the children's court's judgment entered below because the court had previously determined that Defendant "neglected" the child and because, based on undisputed evidence, the court could properly conclude as a matter of law that the child was neglected within the purview of Sections 32A–4–2(C)(4) and 32A–4–28(B)(2).