1997-NMSC-038

945 P.2d 76

**STATE of New Mexico, ex rel., CHILDREN, YOUTH AND FAMILIES DEPARTMENT In the Matter of: Sara R. a child, and concerning Joe R., respondent,**

**State of New Mexico, ex rel., Children, Youth and Families Department, Petitioner–Petitioner,**

**v.**

**JOE R., Respondent–Respondent.**

**No. 23725.**

Supreme Court of New Mexico.

Aug. 22, 1997.

Angela L. Adams, Chief Children's Court Attorney, Diane Garrity, Roy E. Stephenson,

Children's Court Attorneys, Santa Fe, for Petitioner–Petitioner.

Cusack, Jaramillo & Associates, P.C., Sheryl L. Saavedra, Timothy J. Cusack, Roswell, for Respondent–Respondent.

Sanders, Bruin, Coil & Worley, P.A., Michael H. Stone, Roswell, Guardian ad Litem.

## OPINION

MINZNER, Justice.

1. The New Mexico Children, Youth, and Family Services Department (the Department) appeals from a ruling by the Court of Appeals granting Joe R. (Father) an evidentiary hearing to determine whether his parental rights to Sara R. (Child) should be terminated. *State ex rel. Children, Youth & Families Dep't v. Joe R. (State ex rel. Children, Youth & Families Dep't In re Sara R.)*, 1996 NMCA 091, 122 N.M. 284, 287, 923 P.2d 1169, 1172. Father was convicted of first degree murder and false imprisonment for murdering his wife, Child's mother (Mother), and sentenced to life imprisonment plus eighteen months. During the pendency of this appeal, we upheld his conviction and sentence. *Id.* at 289, 923 P.2d at 1174 n. 2. The Court of Appeals held that summary judgment was inappropriate in this case because a question of fact remained regarding whether the parent-child relationship remained viable and important to Child. *Id.* at 287, 923 P.2d at 1172. The Court of Appeals also held that incarceration does not constitute neglect as a matter of law. *Id.* at 286, 923 P.2d at 1171. We agree that incarceration alone does not constitute neglect; however, we reverse the Court of Appeals' granting of a new trial. On the record before us, no genuine issue of material fact exists, and the Department is entitled to judgment as a matter of law. We therefore reverse the Court of Appeals, and we affirm the trial court's judgment for the Department.

## I.

2. Mother was shot by Father in August 1993. Child and her older stepbrother were taken into emergency temporary care by the Department on the same day. Two days later, while Mother remained in intensive care, the Department petitioned for custody of both children on the basis of neglect and/or abuse. Following Mother's death, the Department placed Child in the foster care of a maternal aunt.

3. On November 29, 1993, the children's court determined that Child was abused and neglected and granted the Department temporary custody. In its findings of fact, the court found that Father was incarcerated and that Child had expressed a desire not to see Father. At that time, the Child was almost seven years old.

4. The Department initially pursued the possibility of a permanent guardianship. Child remained in the first foster care placement for about seven months, and then was placed with another maternal aunt on March 31, 1994. By the time of the May 1994 judicial review, the Department changed its plan to adoption. A report filed in connection with that review contains the following notation: "A referral to Central Adoptions was made and several homes were reviewed. However, a family has not been selected because family members are interested."

5. Father was convicted on May 11, 1994. *In re Sara R.*, 122 N.M. at 286, 923 P.2d at 1170. By late June, the Department was satisfied that the second foster care placement was likely to lead to adoption; the Department filed a motion in June 1994, to terminate Father's parental rights. The motion for termination alleged that Child was abused or neglected and the causes or conditions were unlikely to change. The petition also alleged, "[C]hild resides with foster parents who wish to adopt her." At that time, Child was eight-and-a-half years old.

6. In September 1994, the Department moved for summary judgment. In the motion, the State noted that the basis for the termination petition was the neglect of Child. The district court judge, who had presided over Father's criminal case and also heard the case in children's court involving Child, granted the Department's motion.

7. At the hearing on the Department's motion, in December 1994, Father noted that Child had been in the second foster care placement approximately the same length of

time that she had been in the first foster care placement. He argued that there had not been sufficient time for her to form a bond with the family that wished to adopt her and that there was no investigative report in the file on the family. He also noted that Child had visited him at the penitentiary in October for several hours. He argued that a decision terminating parental rights would be premature. The trial court granted the Department's motion in March 1995.

8. Following entry of the final order, Father appealed the termination of his parental rights to the Court of Appeals. Rule 12–201 NMRA 1997. The Court of Appeals reversed and remanded with directions to hold an evidentiary hearing on the merits. *In re Sara R.*, 122 N.M. at 289, 923 P.2d at 1174. Judge Donnelly dissented. *Id.*

9. On appeal to this Court, the Department makes three arguments. First, the Department contends that the finding of abuse or neglect at the adjudicatory hearing binds the parties at a subsequent proceeding to terminate parental rights. Second, the Department argues that New Mexico case law supports its claim that conviction of a parent for the murder of the other parent is neglect of the child as a matter of law. Finally, the Department asserts that if summary judgment remains a viable procedure in termination cases, it should be appropriate here. We address only the latter two arguments. We do not address the first argument made by the Department, since it is not necessary to our disposition.

## II.

10. In New Mexico, parental rights may be terminated upon a showing by the State or other party in interest that the parent has abused, neglected or abandoned the child. NMSA 1978, § 32A–4–28(B) (1993, prior to 1995 amendment). The State must carry its burden of proof by clear and convincing evidence.[1] NMSA 1978, § 32A–4–29(J) (1993). Summary judgment is appropriate in termination proceedings when there are no genuine issues of material fact in dispute, *State ex rel. Children, Youth & Families Dep't In re*

*T.C.*, 1994 NMCA 099, 118 N.M. 352, 353–54, 881 P.2d 712, 713–14, and the moving party is entitled to judgment as a matter of law. Rule 1–056 NMRA 1997. We hold that the Department made a prima facie showing that there were no genuine issues of material fact and that it was entitled to judgment as a matter of law. Father failed to rebut the Department's showing. Therefore, the trial court did not err in granting the Department summary judgment.

## A.

11. Father argues that he should have been allowed to present evidence at a hearing that his actions did not constitute abuse or neglect of Child, and he contends that his incarceration does not preclude his ability to remain her parent. However, as Judge Donnelly points out in his dissent, *In re Sara R.*, 122 N.M. at 291, 923 P.2d at 1176 (Donnelly, J., dissenting), the Abuse and Neglect Act *defines* a neglected child as one "whose parent ... is unable to discharge [his or her] responsibilities to and for the child because of incarceration...." NMSA 1978, § 32A–4–2(C)(4) (1993). We agree that the fact of incarceration, in itself, is not a dispositive legal ground to terminate parental rights. Termination of parental rights should be assessed on a case-by-case basis. *In re Adoption of Doe*, 99 N.M. 278, 282, 657 P.2d 134, 138 (Ct.App.1982). However, when there is no genuine issue of material fact, summary judgment, as in any other case, may be appropriate. *See In re T.C.*, 118 N.M. at 353, 881 P.2d at 713. Where, as here, there can be no dispute that Father neglected the Child and will be unable to rectify that neglect during Child's minority, summary judgment is appropriate.

12. We have said, "[U]nder many circumstances, unfitness is implicitly rather than expressly established when proof is offered of conduct—such as abuse or abandonment—that justifies severing a parent from his or her child." *Roth v. Bookert (In re Adoption of J.J.B.)*, 1995 NMSC 033, 119 N.M. 638, 644, 894 P.2d 994, 1000, *cert. denied*, —— U.S.

---

1. If the child is covered by the Indian Child Welfare Act, the standard is raised to proof beyond a reasonable doubt. NMSA 1978, § 32A–4–29(J) (1993).

——, 116 S.Ct. 168, 133 L.Ed.2d 110 (1995). We noted that the United States Supreme Court "carefully refrained from any constitutional holding regarding the substantive criteria necessary under the Due Process Clause to justify termination of parental rights." *Id.* at 646, 894 P.2d at 1002 (interpreting *Santosky v. Kramer,* 455 U.S. 745, 760–61, 102 S.Ct. 1388, 1398–99, 71 L.Ed.2d 599 (1982)). We concluded that "the specific substantive allegations necessary to support a termination of parental rights were intended to remain a matter of state law" and that "the term 'unfitness' when used by the Supreme Court with reference to a constitutional prerequisite for the termination of parental rights, or the forced breakup of a natural family, is used in a very broad sense. The term at a minimum applies to cases of abandonment, neglect, or abuse of the child." *In re Adoption of J.J.B.,* 119 N.M. at 646, 894 P.2d at 1002. In addition, we held that the showing of parental fitness required as a matter of due process "is met by proof of substantive criteria demonstrating parental inadequacy or conduct detrimental to the child." *Id.*

13. New Mexico statutory law sets out various criteria as bases for terminating parental rights. *See* § 32A–4–28(B)(1)–(3). The criteria include abandonment, Section 32A–4–28(B)(1), neglect or abuse, Section 32A–4–28(B)(2), and presumptive abandonment, Section 32–4–28(B)(3). Neglect and abuse are defined by statute. *See* § 32A–4–2(B) and (C) (1993). This case arises out of the Department's reliance on Father's "neglect." The first question is whether there is any genuine issue of material fact relevant to the criteria on which the Department relied. There is not.

### B.

14. The Court of Appeals relied on a two-part test which requires proof of a "conscious disregard of parental obligation and evidence that the parent-child relationship was destroyed by the parental conduct." *In re Sara R.,* 122 N.M. at 286, 923 P.2d at 1171, (citing *In re Adoption of J.J.B.,* 119 N.M. at 648, 894 P.2d at 1004, and *In re C.P.,* 103 N.M. 617, 621, 711 P.2d 894, 898 (Ct.App.

1985) and holding that the failure to apply this test in an evidentiary hearing denied Father his due process rights). The Court's reliance on this test is misplaced. *In re Adoption of J.J.B.* and *In re C.P.* discussed the importance of this two-part analysis in determining the presence of *abandonment.* The question at issue here is not abandonment, but rather neglect. The trial court had to decide whether any genuine issues of material fact existed as to whether Child was neglected to the extent that the trial court could appropriately terminate parental rights.

■ 15. When the Department relies on the ground of neglect in moving for termination of parental rights, the trial court must assess whether the conditions or causes of the abuse or neglect "are unlikely to change in the foreseeable future despite reasonable efforts by the department . . .; provided, the court may find in some cases that efforts by the department . . . would be unnecessary, when there is a clear showing that the efforts would be futile. . . ." Section 32A–4–28(B)(2). To support summary judgment, the State was required to make a prima facie showing that Child was either neglected or abused, and that those circumstances were unlikely to be remedied in the future. Section 32A–4–28(B)(2); Rule 1–056. The State, in its Motion for Summary Judgment, states that the basis for the Motion to Terminate Parental Rights is the neglect of Child. *See* 32A–4–28(B)(2). The State made a prima facie showing of neglect through the murder of Mother by Father, and the resulting incarceration.

16. Father will be incarcerated for a term of life plus eighteen months. NMSA 1978, § 31–18–14 (1993); NMSA 1978, § 31–18–15(A)(4) (1993, prior to 1994 amendment). He will not be eligible for a parole hearing until he has served approximately thirty years. *See* NMSA 1978, § 31–21–10(A) (1988, prior to 1994 amendment). Child, now about ten-and-a-half years old, will become an adult long before Father is eligible for parole.

17. The New Mexico Legislature has defined "neglect" in various ways. *See* § 32A–4–2(C)(1)–(5). As Judge Donnelly mentions

in his dissent, *see In re Sara R.*, 122 N.M. at 291, 923 P.2d at 1176 (Donnelly, J., dissenting) (quoting Section 32A–4–2(C)(4)), one definition characterizes a neglected child as a child "whose parent ... is unable to discharge his responsibilities to and for the child because of incarceration...." We assume, but need not decide in this case, that a parent may "discharge his or her responsibilities to and for" his or her child, even while incarcerated. It is easy to imagine that family or friends might help raise a child whose parent is in prison, while at the same time facilitating a continuing relationship between that child and the parent. It is possible that a parent might be able to arrange for his or her child's care in some other manner while the parent is incarcerated. We also agree that "[c]ircumstances may be present ... in which a parent is incarcerated, yet is still able to maintain a parental relationship with a child." *In re Sara R.*, 122 N.M. at 287, 923 P.2d at 1172. In this case, however, no such showing was made in response to the Department's motion.

18. In addition, there is another ground of neglect on these facts. The New Mexico Legislature also has defined a neglected child as one "who is without proper parental care and control or subsistence, education, medical or other care or control necessary for the child's well-being because of the faults or habits of the child's parent, guardian or custodian or the neglect or refusal of the parent, guardian or custodian, when able to do so, to provide them...." *See* § 32A–4–2(C)(2). In this case, by committing the murder for which he was incarcerated, Father in this case deprived Child of both parents. No showing was made, and we are not sure what could have been said, that the situation is not due to Father's faults.

19. Neither Father's response to the termination motion nor his response to the motion for summary judgment refutes any of the assertions of neglect; rather, in his response, he argues that genuine issues of material fact do exist, under Section 32A–4–28(B)(3), with respect to the disintegration of the parent-child relationship and the desire of the foster family to adopt Child. Father did not present any genuine issues of materi-al fact in response to the allegations of neglect. We conclude that no genuine issues of material fact exist.

**C.**

20. In *In re Adoption of J.J.B.*, we said "that parental unfitness is inherent in a finding by the court that any of [the] conditions [identified by the Legislature as grounds for termination] exist, and no separate showing or finding by the court with reference to unfitness is necessary." 119 N.M. at 647, 894 P.2d at 1003. We conclude, based on our holding in that case, that when the Department makes a prima facie showing of one or more bases of neglect, and the conditions are not ones that the Department can or reasonably could remedy, the Department has made a prima facie showing of inherent unfitness as a parent. *Cf. In re C.P.*, 103 N.M. at 621, 711 P.2d at 898 (holding Department had shown abandonment on the basis of factors other than incarceration).

21. The remaining question is whether the Department was entitled to judgment as a matter of law. In the absence of any response that showed a genuine issue of material fact, we conclude the Department was entitled to judgment as a matter of law. *In re T.C.*, 118 N.M. at 354, 881 P.2d at 714. We hold that the Department showed conditions of neglect the Department was unable to remedy through reasonable efforts and that those conditions established unfitness as a parent.

22. Although statutes terminating parental rights vary across the country, we are persuaded by two cases decided in other states that the Department's showing of lengthy incarceration of a parent for the murder of the other parent, an unsuccessful initial attempt to identify a family member as permanent guardian, and an apparently successful attempt to identify another family member as an adoptive parent was sufficient to support a prima facie showing for summary judgment. In *R.F. v. S.S. (In re Adoption of R.S.)*, 928 P.2d 1194, 1197 (Alaska 1996), the Alaska Supreme Court held that a natural father had acted unreasonably and contrary to the best interests of his child by refusing to consent to adoption after his con-

viction for murder of his child's mother had been affirmed on appeal. The Alaska statute in question provided for the termination of parental rights "on the grounds that a parent who does not have custody is unreasonably withholding consent to adoption, contrary to the best interest of the minor child. . . ." *Id.* at 1196 (quoting Alaska Stat. § 25.23.180(c)(2) (Michie 1996)). The court affirmed a trial court decision terminating parental rights following a bench trial, holding that the benefit to the child of adoption by his grandparents outweighed his father's interest in waiting until after further post-conviction appeals had been heard. *Id.* at 1197. The court also noted:

> To leave a child in limbo during his formative years based upon the slim chance that R.F. may prevail on one of his many possible post-conviction relief measures contravenes the primary purpose of Alaska's adoption statute: to advance the best interests of the child.

*Id.*

23. Similarly, in *In re C.M.J.*, 278 Ill. App.3d 885, 215 Ill.Dec. 487, 663 N.E.2d 498 (1996), the state commenced an action to terminate Father's parental rights after he was convicted of first-degree murder for the beating death of the children's mother. An Illinois statute provided that "[c]onviction of first degree murder . . . or conviction of second degree murder . . . of a parent of the child to be adopted shall create a presumption of unfitness that may be overcome only by clear and convincing evidence." *Id.*, 215 Ill.Dec. at 490, 663 N.E.2d at 501 (quoting 750 Ill.Comp.Stat. 50/1(D)(j–1) (West 1994)).

24. The court held that the state made a prima facie showing under the statute, which the father was required to rebut, by introducing a certified copy of his judgment and conviction for first-degree murder. *Id.* at 490–91, 663 N.E.2d at 501–02. The court noted that Illinois' adoption act did not provide for a reservation of ruling until the appeal process was finalized but rather characterized a child as "available for adoption" when one parent is deceased and the other is

found unfit. *Id.* at 491, 663 N.E.2d at 502 (quoting 750 Ill.Comp.Stat. 50/1(F) (West 1994)).

25. Neither case is directly on point. However, both support the construction of NMSA 1978, § 32A–5–15 (1993, prior to 1995 amendment), on which we base our holding affirming the district court. Our holding in this case recognizes that the Department has made a prima facie showing of neglect under Section 32A–5–15(B)(2), upon proof of a conviction of first-degree murder of Child's parent. Further, in this case, by demonstrating an attempt to identify a permanent guardian, which had failed, and by a showing of a foster parent presently interested in adopting Child, the Department had shown what our cases have required: "reasonable efforts to assist the parent in adjusting the conditions that render him [or her] unable to care properly for the child." *In re C.P.*, 103 N.M. at 622, 711 P.2d at 899.[2]

■ 26. Given a prima facie showing of no genuine issue of material fact, "the burden then shifts to the opponent to show at least a reasonable doubt, rather than a slight doubt, as to the existence of a genuine issue of fact. . . . [T]he opponent cannot rely on the allegations contained in its complaint or upon the argument or contention of counsel to defeat [the prima facie showing]." *Ciup v. Chevron U.S.A., Inc.*, 1996 NMSC 062, ¶ 7, 122 N.M. 537, 928 P.2d 263. At the hearing on the Department's motion for summary judgment, Father primarily argued that Child had not been in the second foster care placement long enough to develop strong bonds within her foster family and that it was premature to determine that she would be adopted. Both the Department and the Guardian Ad Litem argued that the presence or absence of psychological bonding between Child and members of her second foster family was irrelevant in the present proceeding.

27. We are not persuaded that the issue Father raised was irrelevant. Section 32A–4–28(A) provides that "[i]n proceedings to terminate parental rights, the court shall

**2.** We note that the Department argued that remedial efforts would be futile. Because we conclude that there was sufficient evidence for a prima facie showing of reasonable efforts, we need not address whether there was a clear showing of futility as required by the statute.

give primary consideration to the physical, mental and emotional welfare and needs of the child." The record indicates the Department moved to terminate Father's parental rights at least in part because the second foster placement appeared likely to result in adoption. Thus, as Father argued, the Department had taken the position in moving to terminate his rights that termination was in the Child's best interests because her foster parent or parents had expressed the desire to adopt her. In raising the question of whether adoption was likely within the near future, Father attempted to identify a genuine issue of material fact that should be resolved before determining termination was in child's best interests.

28. Having reviewed the entire record, however, we are not persuaded that the issue Father raised was sufficient to create a reasonable doubt that a genuine issue of material fact existed with respect to the court's decision on Department's motion to terminate Father's parental rights due to neglect.

> "[T]he term, 'best interests' . . . when used in cases involving the taking of custody from a natural parent and giving it to someone else . . . means the opposite of being detrimental or harmful to the child's interests rather than indicating the top among several perfectly acceptable choices." The case before us offers no truly acceptable choice. Instead, we must be resigned to a solution that causes the least amount of harm.

*In re Adoption of J.J.B.,* 119 N.M. at 654, 894 P.2d at 1010 (citation omitted). Father has not raised any material facts refuting the presumption of harm and detriment created by a showing of neglect.

■ 29. Father's rights and obligations as a parent are protected by his constitutional right to due process. *See generally In re Adoption of J.J.B.,* 119 N.M. at 644–47, 894 P.2d at 1000–03 (discussing United States Supreme Court cases protecting parental rights). We have concluded that those rights are satisfied by proof of the elements required in one of the statutory bases for parental termination. *Id.* at 647–50, 894 P.2d at 1003–06 (discussing the criterion of presumptive abandonment). In this case we

hold that the conditions the Legislature has identified as neglect, in Section 32A–4–2(C)(2) and (4), also support an inherent finding of unfitness sufficient to justify termination of parental rights. A finding of unfitness on this basis does not deny Father due process. Further, *R.F.* and *In re C.M.J.* support the notion that termination of parental rights on this basis, legislatively in those cases and as a matter of judicial statutory interpretation in this case, does not offend notions of due process. Therefore, we conclude that there is no genuine issue of material fact as to Father's neglect of Child, and the Department was properly entitled to judgment as a matter of law.

30. We agree with the Court of Appeals that, under the facts of this case, "[C]hild's interest in some degree of permanency, stability, security and long-term planning was paramount." *In re Sara R.,* 122 N.M. at 289, 923 P.2d at 1174. Therefore, we also agree with the Court of Appeals that termination of Father's parental rights could proceed notwithstanding the pendency of his direct appeal from the district court judgment and sentence on his jury conviction for murder.

31. We have resolved this appeal on the basis that, under our existing statutes, the Department made a prima facie showing that there were no genuine issues of material fact and that it was entitled to judgment as a matter of law. We note, however, that the trial court and the Court of Appeals were required to address the issue under a statute not drafted to address the particular facts of this case. We wish we did not live in a time when the particular facts of this case could be viewed as common enough to merit specific legislative attention. Cases in other jurisdictions, such as *R.F.* and *In re C.M.J.,* however, as well as our own *In re Adoption of Doe,* suggest that we do live in such a time. The Department may wish to propose appropriate legislation to the Legislature for its consideration.

### III.

32. We hold that the trial court correctly granted the Department's summary judgment motion and reverse the Court of Ap-

peals determination that Father was entitled to an evidentiary hearing. Father's murder of Mother and his subsequent long-term incarceration lead to a determination that Child is neglected and Father cannot discharge his responsibilities to her. These are conditions Father created. They are not conditions the Department was able to remedy. Although we caution that incarceration alone will not be an appropriate reason to terminate parental rights, on these facts, we find that no genuine issue of material fact exists as to Father's responsibility for Child's situation, his ability to provide and care for Child, nor the best interests of Child. Under these circumstances, the Department was entitled to judgment as a matter of law. The trial court's judgment for the Department is affirmed.

**33. IT IS SO ORDERED.**

FRANCHINI, C.J., and BACA, J., concur.