1998-NMCA-098

962 P.2d 1261

**CHRISTIAN CHILD PLACEMENT SERVICE OF THE NEW MEXICO CHRISTIAN CHILDREN'S HOME, Petitioner–Appellee,**

v.

**John E. VESTAL, Respondent–Appellant.**

No. 19036.

Court of Appeals of New Mexico.

June 9, 1998.

Eric D. Dixon, Portales, for Appellee.

Randy Knudson, Doerr & Knudson, P.A., Portales, for Appellant.

Daniel R. Lindsey, Daniel R. Lindsey, P.A., Clovis, Guardian ad Litem.

## OPINION

DONNELLY, Judge.

{1} Respondent, the natural father of a minor child born to Stephanie S., a thirteen-year-old girl, appeals from an order terminating his parental rights and granting summary judgment in favor of Petitioner Christian Child Placement Service of the New Mexico Christian Children's Home. Two issues are raised on appeal: (1) whether the provisions of NMSA 1978, § 32A–5–19(C) (1993) (prior to 1997 amendment), declaring that paternal consent for adoption of a minor child conceived as a result of rape or incest is not required, violates Respondent's constitutional rights under the United States and New Mexico Constitutions; and (2) whether there were material, disputed issues of fact which preclude summary judgment. For the reasons discussed herein, we affirm.

*Facts and Procedural Posture*

{2} Respondent plead guilty to criminal sexual penetration of a child, contrary to NMSA 1978, § 30–9–11(F) (1995). Stephanie S., the thirteen-year-old victim, gave birth to A.N., a baby girl, on August 4, 1997. Following the birth of the child, the unmarried mother executed a relinquishment and consent to adoption, and agreed to placement of A.N. with Petitioner pending such adoption.

{3} On August 27, 1997, Petitioner filed a petition in the District Court of Roosevelt County, New Mexico, to terminate the parental rights of Respondent. Following the filing of the petition, the district court appointed a guardian ad litem for A.N. On October 21, 1997, Respondent filed a pro se answer to the petition, acknowledging that he is the "biological father and that Stephanie [S.] is the biological mother of a daughter born on August 4, 1997." Respondent's answer also admitted that he "was convicted of Criminal

Sexual Penetration of a minor,"[1] but alleged that the proposed "adoption [was] not in the best interests of the child."

{4} On October 17, 1997, the district court appointed an attorney to represent Respondent in the proceedings to terminate his parental rights. Thereafter, on October 20, 1997, Petitioner filed a motion for judgment on the pleadings or alternatively for an award of summary judgment. Respondent, through his court-appointed attorney, filed a response to Petitioner's motion and contested Petitioner's motion to terminate his parental rights. Respondent also moved to dismiss Petitioner's petition, arguing that the petition was legally deficient and that Stephanie S.'s consent to the termination of her parental rights was given under duress.

{5} On October 30, 1997, Respondent filed an amended answer and counter-petition requesting that he be granted the sole legal and physical custody of A.N. Without filing a motion to intervene, Respondent's parents filed a motion for grandparent visitation. Following a hearing on November 3, 1997, the district judge wrote a letter to counsel notifying them he found that Respondent had no legal basis to assert a claim for parental rights herein, determined that Respondent had neglected the child, and ruled that the motion for summary judgment should be granted. An order granting summary judgment in favor of Petitioner was entered on December 9, 1997.

*Discussion*

■ {6} Respondent argues that because Section 32A–5–19(C) of the Adoption Act does not require proof of neglect or abandonment and because it creates a presumptive ground for termination of his parental rights that is not subject to challenge, he was denied his rights to equal protection and procedural and substantive due process under the United States and New Mexico Constitu-

tions. We do not address Respondent's claim that the termination of his parental rights violates the New Mexico Constitution or that this state's constitution accords greater protection than the United States Constitution because he has not preserved this issue under the criteria spelled out in *State v. Gomez*, 1997–NMSC–006, ¶ 23, 122 N.M. 777, 932 P.2d 1 (when there is no established precedent, party seeking relief under state constitutional provision must provide reasons for interpreting state provision differently from the federal provision).

{7} Section 32A–5–19 of the Adoption Act provides:

The consent to adoption or relinquishment of parental rights required pursuant to the provisions of the Adoption Act [Sections 32A–5–1 to 32A–5–45] shall not be required from:

A. a parent whose rights with reference to the adoptee have been terminated pursuant to law;

B. a parent who has relinquished the child to an agency for an adoption;

C. *a biological father of an adoptee conceived as a result of rape or incest;*

D. any person who has failed to respond when given notice pursuant to the provisions of Section 32-5-27 [32A–5–27] NMSA 1978; or

E. any putative father who has failed to register with the putative father registry within 90 [ninety] days of the child's birth.[2] [Emphasis added.]

{8} In furtherance of his constitutional challenges to the validity of Section 32A–5–19, Respondent argues that the provisions of NMSA 1978, § 32A–5–15 (1995) articulate the sole grounds for terminating parental rights in adoption proceedings. The latter section provides that parental rights with respect to a child may be terminated by proof that the child has been abandoned, neglected or abused. *Cf. State ex rel. Chil-*

---

1. Section 30–9–11(F) provides:
 F. Criminal sexual penetration in the fourth degree consists of all criminal sexual penetration not defined in Subsections C through E of this section perpetrated on a child thirteen to sixteen years of age when the perpetrator is at least eighteen years of age

and is at least four years older than and [is] not the spouse of that child.

2. The record does not disclose whether Respondent registered with the putative father registry as provided for in Section 32A–5–19(E) and NMSA 1978, § 32A–5–20 (1993).

*dren, Youth & Families Dep't v. Joe R.*, 1997–NMSC–038, ¶ 13, 123 N.M. 711, 945 P.2d 76 (identifying abandonment, abuse, and neglect as the bases for terminating parental rights under the Abuse and Neglect Act, NMSA 1978, §§ 32A–4–1 to –33 (1993, as amended through 1995)). Respondent reasons that since none of the statutory grounds set forth in Section 32A–5–15 for termination of parental rights have been proven by clear and convincing evidence, the district court erred in granting Petitioner's motion for summary judgment.

{9} We disagree with Respondent's basic premise that his constitutional rights under the United States and New Mexico Constitutions to due process and equal protection were violated, and that the district court erred in terminating his parental rights in the absence of evidence establishing the existence of one or more of the grounds for termination enumerated in Section 32A–5–15.

*Substantive Due Process*

■ {10} Respondent's substantive due process claims implicate important areas of constitutional concern. *See* U.S. Const. amends. V and XIV; N.M. Const. art. II, § 18. As observed by the United States Supreme Court, "[t]he intangible fibers that connect parent and child . . . are sufficiently vital to merit constitutional protection *in appropriate cases.*" *Lehr v. Robertson*, 463 U.S. 248, 256, 103 S.Ct. 2985, 2990, 77 L.Ed.2d 614 (1983) (emphasis added).

{11} Whether the circumstances presented herein—where Respondent was convicted of criminal sexual penetration of a minor and became a father—represent an "appropriate case" to extend constitutional protection to the biological father-child relationship is a question of first impression in New Mexico courts. The United States Supreme Court has not addressed this precise question, but has indicated that " '[p]arental rights do not spring full-blown from the biological connection between parent and child. They require relationships more enduring.' " *Lehr*, 463 U.S. at 260, 103 S.Ct. at 2992 (quoting with approval Justice Stewart's dissent in *Caban v. Mohammed*, 441 U.S. 380, 397, 99 S.Ct.

1760, 1770, 60 L.Ed.2d 297 (1979) (emphasis omitted)).

■ {12} In *Peña v. Mattox*, 84 F.3d 894 (7th Cir.1996), the Seventh Circuit Court of Appeals addressed a similar issue to that presented here, i.e., whether a man who becomes a father as a result of criminal intercourse with a minor can assert a claim of parental rights to the child conceived as a result of such criminal offense. Chief Judge Posner, speaking for the court, stated:

[N]o court has gone so far as to hold that the mere fact of fatherhood, consequent upon a criminal act that our society does take seriously and that is not cemented (whoever's fault that is) by association with the child, creates an interest that the Constitution protects . . . . The criminal does not acquire constitutional rights by his crime other than the procedural rights that the Constitution confers on criminal defendants. Pregnancy is an aggravating circumstance of a sexual offense, not a mitigating circumstance. The criminal should not be rewarded for having committed the aggravated form of the offense by receiving parental rights which he may be able to swap for the agreement of the victim's family not to press criminal charges.

*Id.* at 900. We agree that a person shown to have committed criminal sexual penetration of a minor, under the circumstances presented here, has not acquired a fundamental right to withhold consent to an adoption.

{13} Respondent also asserts that Section 32A–5–19(C) is unconstitutional because, for example, New York law recognizes certain parental rights for individuals guilty of statutory rape, as opposed to forcible rape, whereas New Mexico does not. In *In re Craig "V" v. Mia "W"*, 116 A.D.2d 130, 500 N.Y.S.2d 568, 569 (1986), relied upon by Respondent, the court held that an individual who has fathered a child by virtue of sexual intercourse which was consensual, albeit perpetrated under circumstances constituting statutory rape, is not precluded under New York law from bringing a paternity proceeding. The New York court based its ruling primarily on the fact that "the legislative proscription against the right to notice in a

proceeding affecting an out-of-wedlock child is limited to a father convicted of the crime of rape in the first degree, which involves forcible compulsion." *Id.* (citations omitted). The court observed that the New York Legislature "specifically declined to extend this limitation to the father of a child who may have been conceived as the result of any lesser degree of rape or sexual misconduct." *Id.* (citation omitted); *see also* Unif. Adoption Act § 3–504, cmt., 9 U.L.A. 53, 55 (Supp. 1997) (noting that Section 3–504(c)(3) of Act "permits termination [of parental rights] for serious and violent offenses by one parent against another"). *In re Craig "V"*, however, is distinguishable on the basis of the provisions of the specific statute involved. The case was not decided as a matter of constitutional law. Although the New Mexico Legislature could decide to give parental rights in a situation like that before us, however, it has not elected to do so, and substantive due process does not require it to do so. We think there can be little doubt concerning the constitutional legitimacy of Section 32A–5–19(C), under the circumstances presented here.

{14} We conclude that the provisions of Section 32A–5–19(C) withstand Respondent's substantive due process constitutional challenge, and we are guided by the rationale set forth in *Peña*, discussed above. *Cf. Ann M.M. v. Rob S.*, 176 Wis.2d 673, 500 N.W.2d 649, 651, 653–55 (1993) (finding that Wisconsin statute denying a statutory rapist the opportunity to contest a petition to terminate his parental rights did not violate the due process and equal protection provisions of the state and federal constitutions). Section 32A–5–19(C) is rationally related to the State's legitimate interest in protecting children and preventing their exploitation. Criminal sexual penetration of a child in violation of Section 30–9–11(F) is clearly a form of sexual abuse. *See* § 32A–4–2(E) (" '[S]exual abuse' includes, but is not limited to, criminal sexual contact, incest or criminal sexual penetration, as those acts are defined by state law[.]"). An offender should not be rewarded for his offense. Thus, we perceive that, under the facts shown, there has been no violation of Respondent's substantive due process rights under the United States Constitution.

*Procedural Due Process*

 {15} Respondent argues he was denied procedural due process because the district court failed to accord him a hearing on his fitness as a parent before granting summary judgment terminating his parental rights to A.N. We disagree. When a petitioner has made a preliminary showing that a respondent is the father of a child that was conceived as a result of rape or incest, any requirement for conducting a hearing on the respondent's fitness is obviated because a finding on that issue would have no legal consequences. By express legislative provision under Section 32A–5–19(C), there is no requirement for obtaining the consent of a biological father of a child conceived as a result of rape. Respondent has not disputed that the child involved herein was conceived as a result of his violation of Section 30–9–11(F). Thus, as a matter of law, once this fact was established, Respondent was not entitled to a further evidentiary hearing. *See Joe R.*, 1997–NMSC–038, ¶ 10, 123 N.M. 711, 945 P.2d 76 (summary judgment proper in termination proceedings if there are no genuine issues of material fact, and moving party is entitled to judgment as a matter of law); *Garrity v. Overland Sheepskin Co.*, 1996–NMSC–032, ¶ 29, 121 N.M. 710, 917 P.2d 1382 (if facts are undisputed and only legal interpretation of facts remains, summary judgment is appropriate).

*Equal Protection*

 {16} Respondent additionally argues that his equal protection rights were violated by Section 32A–5–19(C) in several respects. Respondent attempts to liken his situation to that of an unwed father seeking to exercise his parental rights over a child born out of wedlock and argues that Section 32A–5–19(C) improperly places him in a class of parents who are denied a hearing on their parental fitness, while granting a hearing on fitness to all other parents. *See Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). We find this analogy inapposite under the facts shown here. An

individual who has committed criminal sexual penetration of a child, thereby impregnating her, may be an unwed father, but he is not similarly situated to an unmarried man who has fathered a child by a consenting adult woman. As discussed above, the Legislature has a legitimate statutory purpose in seeking to protect minor children from sex offenders and sexual abuse, and can properly deprive such perpetrators of the fruits of their misconduct.

{17} Relying on *Joe R.*, 1997–NMSC–038, Respondent also argues that his right to equal protection has been violated because murder of one parent by the other parent is "at least as serious" as statutory rape, "yet our Supreme Court has refused to find 'presumptive' termination in such instances." We find this argument unpersuasive. *Joe R.* involved termination of parental rights on the ground of neglect involving a child conceived during the defendant's marriage to the child's mother. Here, however, under Section 32A–5–19(C), the Legislature reasonably concluded that individuals who commit rape or incest of a child, thereby fathering a child, are not similarly situated to a parent who lawfully fathers a child and is subsequently charged with neglect. Thus, separate statutory provisions are appropriate for each. *See Peña*, 84 F.3d at 900 (perpetration of serious criminal act does not create an interest that constitution protects). The Legislature could reasonably decide, in enacting Section 32A–5–19(C), that a defendant who has perpetrated criminal sexual penetration resulting in the birth of a child should not be accorded a right to veto a decision of the victim to place the child for adoption. *See Peña*, 84 F.3d at 900.

{18} Finally, we acknowledge that adoption statutes which discriminate on the basis of gender with regard to the consent required of unwed, biological parents may not be constitutionally applied in cases where the father and the mother are in fact similarly situated in their relationship with the child. *See Lehr*, 463 U.S. at 267, 103 S.Ct. at 2996. Such situation does not exist here. In the present case, moreover, Respondent has not asserted that Section 32A–5–19(C) contains an invidious gender-based classification. *Cf.*

*State v. Lucero*, 104 N.M. 587, 590, 725 P.2d 266, 269 (Ct.App.1986) (appellant must specifically apprise trial court of claimed error and invoke intelligent ruling thereon in order to preserve issue for appellate review).

*Propriety of Summary Judgment*

{19} Lastly, Respondent contends that the district court erred in granting Petitioner's motion for summary judgment because there were material issues of fact to be decided. Our review of the record readily dispenses with this argument. Respondent filed an answer to the petition filed herein acknowledging that he is the biological father of the child born to Stephanie S. on August 4, 1997, and that he was convicted of criminal sexual penetration of a minor (a fourth-degree felony). Respondent does not dispute that the offense for which he was convicted grew out of his sexual intercourse with Stephanie S. This admission brings Respondent within the purview of Section 32A–5–19(C).

{20} Respondent also contends it was error to grant summary judgment because the record does not reflect that his parents (the paternal grandparents) were provided with notice of the proceedings to terminate his parental rights herein, or that they were not accorded visitation rights as permitted by the statutes permitting grandparent visitation. We disagree. Respondent has no standing to assert such claim. *Cf. Marchman v. NCNB Tex. Nat'l Bank*, 120 N.M. 74, 95, 898 P.2d 709, 730 (1995) (affirming partial summary judgment against parties where they lacked standing to raise claim on behalf of corporate entity). Moreover, the record establishes that the grandparents, in fact, were aware of the proceedings and filed a motion for visitation herein. Indeed, the district judge expressly considered the grandparents' motion and denied it. *Cf. Lucero v. Hart*, 120 N.M. 794, 799–800, 907 P.2d 198, 203–04 (Ct.App.1995) (grandparent visitation subordinate to best interests of child). The grandparents have not appealed this determination and the time for filing an appeal has expired.

{21} Respondent also argues that summary judgment was improper because of

"a plethora of issues concerning the rights and position of the natural mother insofar, [sic] as they may effect [sic] [Respondent]." For this reason, he asserts that Stephanie S. was an indispensable and necessary party to the petition for termination of Respondent's parental rights. The record, however, dispels this claim. Stephanie S. relinquished her parental rights to A.N., the child born to her, and Respondent has made no showing that such consent was involuntary.

{22} Under these circumstances, we conclude that the district court properly awarded summary judgment and Respondent has failed to demonstrate the existence of any material, disputed factual issues which would preclude an award of summary judgment. *See Gonzales v. Allstate Ins. Co.*, 1996–NMCA–041, 122 N.M. 137, 139, 921 P.2d 944, 946 (in reviewing grant of summary judgment, court determines whether moving party has established there are no genuine is-sues of material fact and whether movant has shown that it is entitled to judgment as a matter of law); *see also Joe R.*, 1997–NMSC–038, ¶ 10, 123 N.M. 711, 945 P.2d 76 (where there are no disputed material facts, appellate court's review is limited to whether the law was correctly applied to the facts).

*CONCLUSION*

{23} The order granting summary judgment is affirmed.

{24} IT IS SO ORDERED.

HARTZ, C.J., and ARMIJO, J., concur.