1999-NMCA-077

983 P.2d 1011

**STATE of New Mexico, ex rel., CHILDREN, YOUTH AND FAMILIES DEPARTMENT, Petitioner–Appellee,**

v.

**PAUL P., JR., Respondent–Appellant,**

**and**

**Concerning Paul P., III, A Child,**

**and**

**The Coeur d'Alene Tribe of Indians, Intervenor.**

**No. 19,100.**

Court of Appeals of New Mexico.

May 18, 1999.

Angela L. Adams, Children's Court Attorney, Roy E. Stephenson, Children's Court Attorney, Children, Youth & Families Dept., Santa Fe, for appellee.

Jane Bloom Yohalem, Santa Fe, for appellant.

## OPINION

PICKARD, Chief Judge.

{1} Paul P., Jr. (Father) appeals the trial court's order dismissing him from the children's court proceedings regarding his son, Paul P., III (Child). The trial court found that Father's consent to adoption or relinquishment of parental rights to the child was not required under NMSA 1978, § 32A–5–19(C) (1997). We disagree and reverse.

## I. FACTUAL AND PROCEDURAL BACKGROUND

{2} The relevant facts are not in dispute. Father is the biological father of Child. At the time that Child was conceived, Father was married to Child's maternal grandmother (Grandmother). Mother was sixteen years old and Father was thirty-nine years old when Child was conceived.

{3} Mother relinquished her parental rights to Child, and Grandmother adopted him when he was four years old. Father and Grandmother raised Child until Grandmother's death in 1994. Father then continued to raise Child by himself. The Children, Youth, and Families Department (the Department) took custody of Child on July 14, 1995, upon allegations that Child was abused. The trial court entered a default judgment against Father on the abuse petition. The trial court adopted a treatment plan to address the circumstances of abuse, with the goal of returning Child to Father. By October 30, 1996, the trial court found that Father had made some efforts to comply with the treatment plan.

{4} In April 1997, however, the trial court found that further efforts by the Department to reunite child with Father would be futile. In May 1997, the Department moved to dismiss Father from the Department's proceedings, alleging that his consent to adoption or relinquishment of parental rights was not required under Section 32A–5–19(C). Father argued in response that the Department had not proved that the child was conceived as a result of rape and that, in

any case, the Department should be estopped from dismissing Father without a full evidentiary hearing. Evidence at the motion hearing showed that the child had been conceived when Mother was sixteen and Father was thirty-nine.

{5} The trial court concluded that Father's consent was not required because Child was conceived as the result of conduct constituting criminal sexual penetration pursuant to NMSA 1978, § 30–9–11(F) (1995). The trial court rejected Father's estoppel defense.

## II. DISCUSSION

{6} Father raises two issues on appeal. First, he contends that the trial court erred in determining that sexual relations with a sixteen-year-old constitutes criminal sexual penetration pursuant to Section 30–9–11(F). He also argues that the trial court erred in rejecting his estoppel defense, given that the Department had acquiesced in Father's exercise of parental rights for eight years. Because we agree with Father's first contention, we need not reach his estoppel argument.

### A. Standard of Review

■ {7}. Issues of statutory interpretation and application are questions of law that this Court reviews de novo. See State v. Rowell, 121 N.M. 111, 114, 908 P.2d 1379, 1382 (1995).

### B. Applicability of Section 32A–5–19(C)

{8} The Children's Code provides that certain persons need not consent to adoption or relinquishment of parental rights. One such class of persons is "a biological father of an adoptee conceived as a result of rape or incest."Section 32A–5–19(C). We have upheld the constitutionality of this section. See Christian Child Placement Serv. v. Vestal, 1998–NMCA–098, ¶¶ 14–15, 125 N.M. 426, 962 P.2d 1261. The trial court relied on this provision in dismissing Father from the Department's proceedings regarding Child. The Department alleged, and the trial court found, that Child was conceived as a result of rape, as defined by Section 30–9–11(F).

{9} Criminal sexual penetration is defined by statute, in pertinent part, as "the unlawful and intentional causing of a person to engage in sexual intercourse[.]" Section 30–9–11(A). The trial court found that Child had been conceived as a result of fourth-degree criminal sexual penetration, which is defined as "all criminal sexual penetration not defined in Subsections C through E of this section perpetrated on a child thirteen to sixteen years of age when the perpetrator is at least eighteen years of age and is at least four years older than and not the spouse of that child." Section 30–9–11(F). This was the only ground argued for the dismissal of Father from these proceedings.

■ {10} Under this definition, Child was not "conceived as a result of" rape. It is not disputed that Mother was sixteen when Child was conceived. Although, on its face, the statutory language "perpetrated on a child thirteen to sixteen years of age" could be construed to include a sixteen-year-old victim, we have never given the language such an interpretation. Rather, our cases have long held that criminal sexual penetration of a sixteen-year-old does not fall under similar statutory provisions. See, e.g., State v. Richardson, 48 N.M. 544, 546, 154 P.2d 224, 225 (1944) (statute defined crime as being perpetrated on a female "under the age of sixteen"); State v. Hargrove, 108 N.M. 233, 238, 771 P.2d 166, 171 (1989) (describing criminal sexual penetration as certain intercourse with a child "between" ages of thirteen and sixteen).

{11} The Uniform Jury Instruction (UJI) for criminal sexual penetration further supports this view. For example, UJI 14–945 NMRA 1999 specifically requires the victim to be "at least 13 but less than 16 years old[.]" Under these authorities, the trial court erred in finding that Child was conceived as a result of rape under Section 30–9–11(F). We note that Mother's age at the time of Child's conception renders criminal sexual penetration under any subsection of Section 30–9–11 inapplicable.

■ {12} The Department does not argue on appeal that Child was conceived as a result of rape. Rather, it raises issues re-

garding Mother's relationship with Father before she attained age sixteen. However, whether Father committed acts of criminal sexual penetration against Mother on prior occasions is not relevant to our analysis here. We are only considering whether the Department could prove, and the trial court reasonably find, that Child resulted from rape or incest as Section 32A–5–19(C) requires.

{13} The Department goes on to argue the policy basis for the trial court's decision. In *Christian Child Placement Service*, 1998–NMCA–098, ¶ 22, 125 N.M. 426, 962 P.2d 1261, we upheld the dismissal of a father from adoption proceedings regarding a child he fathered in a rape. We held that Section 32A–5–19(C) served to prevent the exploitation of children, and not reward sex offenders for their offenses. *See id.* ¶ 14. We stand by that policy. Nonetheless, the situation in this case is different from that in *Christian Child Placement Service.* Here, Child was not actually conceived as a result of rape as argued by the Department below. As a result, our statutory scheme requires that Father be allowed to defend against termination of parental rights in a full evidentiary hearing following procedures, including the filing of a petition, as contemplated in NMSA 1978, § 32A–4–29 (1997). We hold that the trial court erred as a matter of law in dismissing Father from the proceedings pursuant to Section 32A–5–19(C).

### C. *Fundamental Error*

{14} Father admits that this issue was not raised below. Nonetheless, he argues that the trial court committed fundamental error, thus meriting this Court's review. We agree. As set out by our Supreme Court, we will address unpreserved errors that "go to the foundation of the case, and which deprive the defendant of rights essential to his defense." *State v. Lucero*, 70 N.M. 268, 272, 372 P.2d 837, 840 (1962); *see also* Rule 12–216(B) NMRA 1999. Although fundamental error does not generally apply in civil cases, we will apply the doctrine in exceptional cases. *See Diversey Corp. v. Chem–Source Corp.*, 1998–NMCA–112, ¶ 40, 125 N.M. 748, 965 P.2d 332. We have held

that termination of parental rights cases can be candidates for fundamental error analysis. *See, e.g., In re Arnall*, 94 N.M. 306, 308, 610 P.2d 193, 195 (1980).

{15} The error committed in this case deprived Father of his right to due process of law. We have held that a parent's rights are protected by a constitutional right to due process. *See State ex rel., CYFD v. Joe R.*, 1997–NMSC–038, ¶ 29, 123 N.M. 711, 945 P.2d 76. We have also held that the procedures set out in the Children's Code for termination of parental rights suffice to insure a parent's due process rights. *See id.* While it is not every deprivation of due process that rises to the level of fundamental error, in this case, Father was deprived of the protections of the very statutory bases for termination of his parental rights when he was dismissed from the proceedings.

{16} The Department argues that the dismissal of Father from the proceedings did not constitute fundamental error because dispensing with Father's parental rights should not shock our conscience. We disagree. Where the Department argues and the trial court accepts as the only basis for judgment a theory that is inapplicable, even our civil cases hold that error does not have to be preserved. *See Gracia v. Bittner*, 120 N.M. 191, 197, 900 P.2d 351, 357 (Ct.App.1995).

### III. CONCLUSION

{17} We reverse the trial court's dismissal of Father from the proceedings and remand the case to the trial court to allow the Department to file an appropriate petition and then prove one or more of the statutory bases for termination of parental rights.

{18} **IT IS SO ORDERED.**

APODACA and ARMIJO, JJ., concur.