**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: _____**

**Filing Date: August 20, 2013**

**Docket No. 32,193**

**CHRIS and CHRISTINE L.,**

      **Petitioners-Appellees,**

**v.**

**VANESSA O.,**

      **Respondent-Appellant,**

**and**

**ADON F.,**

      **Respondent,**

**IN THE MATTER OF NATALIA O.,**

      **Child.**

**APPEAL FROM THE DISTRICT COURT OF SANDOVAL COUNTY**
**Violet C. Otero, District Judge**

Justice Legal Group, P.C.
David A. Standridge, Jr.
Albuquerque, NM

for Appellees

Law Offices of Jane B. Yohalem
Jane B. Yohalem
Santa Fe, NM

for Appellant

Administrative Office of the Courts

Elizabeth A. Collard, Guardian Ad Litem
Santa Fe, NM

for Child

## OPINION

**FRY, Judge.**

**{1}** In this adoption proceeding, Petitioners Chris and Christine L. (Adoptive Parents) sought and the district court ordered termination of the parental rights of Child's biological mother (Mother). Although the adoption provisions of the Children's Code provide that the district court shall appoint counsel for an indigent parent upon request, the district court in this case failed to advise Mother of this right. We conclude that this failure to advise constituted fundamental error. We reverse the final decree of adoption and remand for a determination of whether Mother was indigent at the time the adoption proceeding was initiated.

## BACKGROUND

### The Guardianship Proceeding

**{2}** Although this case is an adoption proceeding, it was preceded by a guardianship proceeding that we summarize here in order to provide context. Following a referral to the Department of Children, Youth and Families, Mother agreed to place Child with Adoptive Parents while undertaking a family plan created by the Department's child protective services division. Adoptive Parents sought appointment as permanent guardians under the Kinship Guardianship Act. Pending a hearing on the petition for permanent guardianship, the district court entered an order appointing Adoptive Parents as temporary guardians of Child with the idea that Child would be transitioned back to Mother.[1] The order recited that Mother consented to the appointment and that she should have a minimum of two supervised visits (presumably per week) with Child. Mother was not represented by counsel at any time during the guardianship proceedings.

**{3}** Relations between Mother and Adoptive Parents soon became strained. Four days after the order was filed, Mother filed a response opposing Adoptive Parents' petition for permanent guardianship alleging that Adoptive Parents had stopped communicating with Mother and requesting reunification with Child. Adoptive Parents then filed a motion seeking termination of Child's visits with Mother, and Mother moved for unlimited visits

---

[1]Child's biological father was a party to both the guardianship and adoption proceedings, but he is not a party to this appeal. Therefore, while the father also jointly filed papers with Mother, we refer only to Mother's participation in the proceedings.

2

and to revoke the guardianship.

**{4}**     The parties finally reached an agreement whereby Mother agreed to Adoptive Parents becoming Child's permanent guardians while Adoptive Parents agreed to work with Mother toward the goal of transitioning Child back to Mother. However, relations again became strained, and Adoptive Parents filed a motion to terminate the guardianship. Following a hearing and a change of Child's therapist, Adoptive Parents withdrew their motion to terminate the guardianship. Litigation continued, but relations between the parties remained contentious.

**The Termination/Adoption Proceeding**

**{5}**     Adoptive Parents then filed a new proceeding seeking termination of Mother's parental rights and adoption of Child. This appeal is from the district court's judgment in that termination/adoption proceeding.

**{6}**     At no time from the inception of the adoption proceeding through entry of the final decree did the district court inform Mother that, according to NMSA 1978, Section 32A-5-16(E) (2009), the court would appoint counsel for Mother if she was indigent and requested counsel. The question of Mother's pro se status arose at the first hearing in the adoption case, and the district court told Mother, "[Y]ou are here pro se, so notwithstanding the fact that you are not represented by [an] attorney[], you're going to be held to the standard of following the rules[.] . . . At any time during these proceedings you may hire an attorney. You're not precluded from doing that because you appear here pro se."

**{7}**     Mother faced a challenging proceeding. The court entered a pre-trial order, which listed twenty-one witnesses Adoptive Parents intended to call, including six identified as doctors. The court later appointed a Rule 11-706 NMRA expert to perform a bonding study.

**{8}**     The trial, scheduled for three days, was held seven months after the termination/adoption petition was filed. Adoptive Parents' counsel announced that he would be calling about sixteen witnesses to testify, including four doctors.

**{9}**     During the trial, Mother demonstrated uncertainty about how to conduct herself. Adoptive Parents called the guardian ad litem (GAL) as their first witness. When Adoptive Parents' counsel offered exhibits identified by the GAL, the district court asked Mother if she had any objection, to which Mother replied, "I'm not sure[,]" and, later, "I really don't know what that means, honestly." Mother tried to cross-examine the GAL, but she declined to cross-examine any of the five other witnesses called by Adoptive Parents.

**{10}**     Following the lunch break on the first day of trial, Mother announced, "I just want to let you know that I won't be continuing with this hearing today." She continued, "I can't take hearing all this. It's false. People want to be false under oath, that's fine, but I am excusing myself, and I will appeal." The district court advised Mother that it was against

3

her best interests to leave the hearing, but Mother left anyway. Adoptive Parents then moved for a directed verdict, which the district court granted. The court then entered a final decree granting Adoptive Parents' petition for adoption.

**{11}** Prior to filing a notice of appeal, a legal aid attorney filed a limited entry of appearance, a certificate supporting Mother's indigency, and a motion for appointment of an appellate attorney for Mother. The district court appointed appellate counsel for Mother, and this appeal followed.

**DISCUSSION**

**Issue and Standard of Review**

**{12}** Section 32A-5-16(E) provides that in an adoption proceeding where termination of parental rights is sought, a district court "shall, upon request, appoint counsel for an indigent parent who is unable to obtain counsel or if, in the court's discretion, appointment of counsel for an indigent parent is required in the interest of justice." If the court appoints counsel, payment "shall be made by the petitioner pursuant to the rate determined by the [S]upreme [C]ourt of New Mexico for court-appointed attorneys." *Id.* The question we must answer is whether a district court in such a proceeding must advise the parent of the right to counsel set out in Section 32A-5-16(E).

**{13}** Interpretation of a statute is a question of law that we review de novo. *State ex rel. Children, Youth & Families Dep't v. Carl C.*, 2012-NMCA-065, ¶ 8, 281 P.3d 1242. "In interpreting statutes, we seek to give effect to the Legislature's intent, and in determining intent we look to the language used and consider the statute's history and background." *Id.* (internal quotation marks and citation omitted).

**Overview of the Children's Code and Termination of Parental Rights**

**{14}** In determining the meaning of Section 32A-5-16(E), we must read all provisions of the statutory scheme in order to ascertain legislative intent. *In re Samantha D.*, 1987-NMCA-082, ¶ 12, 106 N.M. 184, 740 P.2d 1168. There are two methods of terminating parental rights under our Children's Code: one under the child abuse and neglect provisions of the Code and one under the adoption provisions of the Code. Under the abuse and neglect provisions, termination may be sought after the Children, Youth and Families Department (the Department) has taken custody of an allegedly abused and/or neglected child and either the parent has abandoned the child or the Department establishes that "the conditions and causes of the neglect and abuse are unlikely to change in the foreseeable future despite reasonable efforts by the [D]epartment or other appropriate agency to assist the parent in adjusting" those conditions and causes. NMSA 1978, § 32A-4-28(B)(2) (2005). Under the adoption provisions of the Code—applicable in the present case—Department, an agency, or "any other person having a legitimate interest in the matter, including a petitioner for adoption, the child's guardian, the child's guardian ad litem or attorney in another action,

4

a foster parent, a relative of the child or the child" may initiate a proceeding to terminate parental rights on grounds similar to those stated in the abuse and neglect provisions. NMSA 1978, §§ 32A-5-15(B) (1995), -16(A)(3).

**{15}** While a parent has a right to counsel under both types of termination proceedings, the statutes express the right differently. Under the abuse and neglect provisions, "[a]t the inception of an abuse and neglect proceeding, counsel *shall be appointed* for the parent, guardian[,] or custodian of the child[,]" and the appointed counsel shall represent the person "named as a party until an indigency determination is made at the custody hearing." NMSA 1978, § 32A-4-10(B) (2005) (emphasis added). In addition, "[c]ounsel shall also be appointed if, in the court's discretion, appointment of counsel is required in the interest of justice." *Id.* Nothing in this statute requires the parent (or guardian or custodian) to *request* the appointment of counsel.

**{16}** In contrast, language in the adoption provisions of the Code suggests that a parent must request the appointment of counsel. That provision states that "[t]he court shall, upon request, appoint counsel for an indigent parent who is unable to obtain counsel or if, in the court's discretion, appointment of counsel for an indigent parent is required in the interest of justice." Section 32A-5-16(E). Thus, it is possible to read these two statutes as providing that, while both types of proceedings require a showing of indigency in order to obtain counsel for the termination proceedings, only a parent whose rights may be terminated in an adoption proceeding must request the appointment of counsel.

**Legislature's Intent**

**{17}** It does not make sense that the Legislature would draw a distinction between a parent in an abuse and neglect proceeding and a parent in an adoption proceeding, each of whom faces potential termination of the fundamental right to the care and custody of their children. *See State ex rel. Children, Youth & Families Dep't v. John R.*, 2009-NMCA-025, ¶ 27, 145 N.M. 636, 203 P.3d 167 (explaining that "a parent has a fundamental interest in the care, custody, and control of his or her children"). In both types of proceedings, the result is the same: the parent's rights to a relationship with his or her child(ren) are permanently severed. Consequently, in both types of proceedings, the appointment and assistance of counsel is equally important to an indigent parent. It follows that in both types of proceedings the court should advise the parent of the right to have counsel appointed if the parent is indigent. Having the right is meaningless if the parent is unaware of the right. *See State ex rel. Dep't of Human Svcs. v. Perlman*, 1981-NMCA-076, ¶ 10, 96 N.M. 779, 635 P.2d 588 (analyzing provision in prior version of the Children's Code and stating that "[s]ince [the mother] was not informed that she was entitled to an attorney and that one might be obtained for her if she could not afford to pay for one, she hardly could intelligently waive rights of which she was not aware"); *In re B.*, 285 N.E.2d 288, 290 (N.Y. 1972) (explaining that if a parent were not advised of the right to counsel, "there could be no assurance either that he knew he had such a right or that he had waived it"). Indeed, the colloquy in this case between the district court and Mother may have even suggested to Mother that she had no choice but to pay for

5

an attorney out of her own funds. The court told Mother, "At any time during these proceedings you may hire an attorney."

**{18}** We conclude that a court must advise a parent in termination proceedings under the adoption provisions of the Children's Code that he or she is entitled to have counsel appointed if indigency can be established. It makes sense that in any circumstance where an indigent litigant has the right to appointed counsel the court first advises the person of the right, and the person then requests the appointment. Thus, the fact that Section 32A-5-16(E) emphasizes the *request* for an attorney does not obviate the necessity of first telling the parent that such a request may be honored as a matter of right. *See Bishop v. Evangelical Good Samaritan Soc'y*, 2009-NMSC-036, ¶ 11, 146 N.M. 473, 212 P.3d 361 (stating that "[w]e must also consider the practical implications and the legislative purpose of the statute, and when the literal meaning of a statute would be absurd, unreasonable, or otherwise inappropriate in application, we go beyond the mere text of the statute").

**Preservation**

**{19}** Adoptive Parents argue that Mother failed to preserve her argument that the district court should have advised her that she had a right to counsel. Adoptive Parents maintain that Mother never stated to the district court that she was indigent, and she never asked for counsel to be appointed. Because she never raised the issue, Adoptive Parents argue that they did not have the opportunity to respond to it in the district court. *See State v. Leyva*, 2011-NMSC-009, ¶ 36, 149 N.M. 435, 250 P.3d 861 (explaining that parties are required to preserve their arguments in the district court "(1) to alert the trial court to a claim of error so that it has an opportunity to correct any mistake, and (2) to give the opposing party a fair opportunity to respond and show why the court should rule against the objector" (internal quotation marks and citation omitted)).

**{20}** While it is true that we generally require preservation of issues raised on appeal, we may consider questions involving fundamental error, which "go[es] to the foundation of the case, and which deprive[s] the [party] of rights essential to his defense." *State ex rel. Children, Youth & Families Dep't v. Paul P., Jr.*, 1999-NMCA-077, ¶ 14, 127 N.M. 492, 983 P.2d 1011 (internal quotation marks and citation omitted). "[T]ermination of parental rights cases can be candidates for fundamental error analysis." *Id.*

**{21}** It is well established that "a parent has a fundamental interest in the care, custody, and control of his or her children." *John R.*, 2009-NMCA-025, ¶ 27. Thus, actions to terminate a parent's rights in this regard "must be conducted with scrupulous fairness." *State ex rel. Children, Youth & Families Dep't v. Ruth Anne E.*, 1999-NMCA-035, ¶ 19, 126 N.M. 670, 974 P.2d 164 (alteration, internal quotation marks, and citation omitted). Here, the district court failed to advise Mother of the statutorily mandated right to counsel provided to an indigent parent, which impacted Mother's due process rights. *See* NMSA 1978, § 32A-5-2(C) (1993) (stating that one purpose of the Adoption Act is to "ensure due process protections"); *Paul P., Jr.*, 1999-NMCA-077, ¶ 15 (stating that "the procedures set

out in the Children's Code for termination of parental rights suffice to insure a parent's due process rights"). Mother's clear discomfort with trial procedure and her reluctance to cross-examine witnesses, which included one doctor, a dentist, and the Rule 11-706 expert, underscore the reasons why the Legislature mandated the appointment of counsel for indigent parents facing destruction of the parent-child relationship. Thus, the court's failure to advise Mother that she would be entitled to appointed counsel if she could establish indigency constituted fundamental error.

**{22}** While Adoptive Parents argue that due process protections are not triggered in this private adoption case because there is no state action, we are not persuaded. Parental rights cannot be terminated in the absence of a state action inherent in the statutory schemes set out in the Children's Code. The Legislature has established two ways of terminating parental rights, one of which may be initiated by a private party, as in this case. And, as the United States Supreme Court has stated, termination cases initiated by private parties involve "the imposition of an official decree extinguishing, as no power other than the [s]tate can, [the] parent-child relationships." *M.L.B. v. S.L.J.*, 519 U.S. 102, 116 n.8 (1996). Our Legislature recognized this fact by expressly stating that one of the purposes of the adoption provisions of the Children's Code is to "ensure due process protections." Section 32A-5-2(C).

**Adoptive Parents' Additional Arguments**

**{23}** Adoptive Parents make several additional arguments, including the contention that if the district court erred in failing to advise Mother of her right to counsel, either the error was harmless or Mother invited the error; and that even if Mother is entitled to relief, further factual development is necessary. We agree that further factual development is necessary to determine whether Mother was indigent at the relevant times, but we are not persuaded by Adoptive Parents' remaining arguments. We address these remaining arguments first and then discuss the need for further factual development.

**Harmless Error and Invited Error**

**{24}** Adoptive Parents argue that Mother made no showing that she was indigent, which is a prerequisite for the appointment of counsel. In addition, they claim that Mother had no real rebuttal to Adoptive Parents' showing that Mother abandoned Child and, as a result, they maintain that any error resulting from the court's failure to advise Mother of her right to counsel was harmless.

**{25}** We do not agree. We have already determined that the district court's failure to advise Mother of her right to counsel constituted fundamental error. Fundamental error can hardly be considered harmless. And if Mother did not know that indigency would entitle her to appointed counsel, she could not know that she had to establish that she was indigent. In addition, it is entirely possible that Mother could have rebutted Adoptive Parents' showing of abandonment if Mother had been represented by counsel.

7

**{26}** We are equally unpersuaded by Adoptive Parents' argument that Mother invited any error by implying in her first pleading in the adoption case that she had recovered from financial difficulties "during [a] three[-]month period" and by detailing expenditures she had made during the guardianship proceedings.

**{27}** Invited error occurs where "[a] party . . . has contributed, at least in part, to perceived shortcomings in a trial court's ruling," and, as a result, the party "should hardly be heard to complain about those shortcomings on appeal." *Cordova v. Taos Ski Valley, Inc.*, 1996-NMCA-009, ¶ 13, 121 N.M. 258, 910 P.2d 334. Adoptive Parents imply that Mother's vague statements in her initial pleading misled the district court into concluding that Mother was not indigent. The fact that Mother referred to financial difficulties in the past tense and that she had been able to pay some costs of litigation does not rise to the level of an affirmative assertion that she was not indigent. Because Mother did not know that indigency could result in the appointment of counsel, we cannot attribute any significance to the statements in her pleading, nor can we say that it constituted invited error.

**Remand for Indigency Determination**

**{28}** Because the district court erred in failing to advise Mother of her statutory right to counsel upon a showing of indigency, we reverse the district court's final decree of adoption and remand for a determination of whether Mother was indigent at the initiation of the adoption proceedings. If Mother can establish indigency, then she is entitled to a new trial with counsel representing her. If she cannot establish that she was indigent at that time, then the district court may re-enter the final decree.

**CONCLUSION**

**{29}** For the foregoing reasons, we reverse the district court's final decree of adoption and remand for proceedings consistent with this Opinion.

**{30}   IT IS SO ORDERED.**

 

_____
**CYNTHIA A. FRY, Judge**

**WE CONCUR:**

_____
**JONATHAN B. SUTIN, Judge**

_____
**M. MONICA ZAMORA, Judge**