This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-38741

**STATE OF NEW MEXICO ex rel. CHILDREN, YOUTH & FAMILIES DEPARTMENT,**

Petitioner-Appellee,

v.

**KATRINA B.,**

Respondent-Appellant,

and

**SERAPIO R.,**

Respondent,

**IN THE MATTER OF KINGSTON R.,**

Child.

**APPEAL FROM THE DISTRICT COURT OF TAOS COUNTY**
**Emilio J. Chavez, District Judge**

Children, Youth & Families Department
Rebecca J. Liggett, Chief Children's Court Attorney
Robert Retherford, Children's Court Attorney
Santa Fe, NM

for Appellee

Susan C. Baker
El Prado, NM

for Appellant

Terry L. Hull
Taos, NM

Guardian Ad Litem

## DECISION

**B. ZAMORA, Judge.**

**{1}**     Katrina B. (Mother) appeals the termination of her parental rights to Child arguing that: (1) the district court lacked jurisdiction over Child; (2) substantial evidence did not support the district court's termination of Mother's parental rights; and (3) the district court violated her constitutional right to due process by failing to provide an attorney during the termination of parental rights (TPR) hearing. We affirm.

## BACKGROUND

**{2}**     The Children Youth & Families Department (CYFD) filed an abuse and neglect petition (the First Petition) and an ex parte motion for custody order of Child on June 16, 2015. At the time, Mother and Child, who was four years old, resided in Taos County, New Mexico. The First Petition alleged that Child was subjected to physical, emotional, and psychological abuse by Mother, and that Mother neglected Child by failing to provide "proper parental care" in the form of education, medical, or other forms of care. Pursuant to the motion for ex parte custody order, CYFD sought immediate custody of Child. Mother fled the State after being informed of the filing of the First Petition, taking Child with her.

**{3}**     In Mother's absence, the district court held a custody hearing on June 23, 2015, and ordered that Child "remain in the legal custody of CYFD pending adjudication." At the same hearing, the district court found that Mother "fled the [s]tate after being informed regarding the instant investigation" and ordered Mother to "immediately return to the State of New Mexico with . . . [C]hild." Mother finally relinquished Child to CYFD custody in September 2015. After the August adjudicatory hearing, the district court determined that Child was abused and neglected, pursuant to NMSA 1978, Section 32A-4-2(B)(2), (G)(2) (1993, amended 2018). The district court found that Mother "emotionally and psychologically abused" Child and neglected Child by not "providing proper supervision[ and] medical care[.]" Pursuant to the court's order, Child remained in CYFD custody.

**{4}**     On November 25, 2015, the district court dismissed Child from the case, and granted full physical custody of Child to Father, who resided in Texas. The district court entered an order of dismissal pertaining to Child, which permitted Mother supervised visits with Child "at her expense." Approximately one month later, in December 2015, Father turned Child back over to Mother at a restaurant in Texas, because Father "didn't have anybody" to watch Child. After CYFD learned Mother again had custody of Child, it filed a second abuse and neglect petition (the Second Petition) in February 2016. The

district court consolidated the first and second abuse and neglect proceedings. At a hearing on the Second Petition, the district court again found Child was abused and neglected, taking judicial notice of its findings of abuse and neglect made pursuant to the First Petition. In October 2016 CYFD filed a motion for termination of parental rights arguing that the termination is in the best interests of Child taking into consideration his "physical, mental, and emotional needs[.]"

**{5}** From the filing of the Second Petition in February 2016, until January 2019, Child was not physically present in New Mexico. Child was returned to New Mexico in January 2019, after Oregon law enforcement officials and Oregon's child welfare agency located Child and took him from Mother's custody. After Mother returned to New Mexico, the TPR trial proceeded, with hearings held from August to October 2019. The district court terminated Mother's parental rights to Child in December 2019, concluding that Child "would not be safe, physically and emotionally, if returned" to Mother. This appeal followed.

## DISCUSSION

### I. The District Court Had Jurisdiction Following CYFD's Filing of the Second Abuse and Neglect Petition

**{6}** Mother contends that the district court "did not have jurisdiction over the Child when the [second] abuse and neglect petition was filed [in February 2016] because Mother had relocated to Oregon and neither party, [Mother nor Child,] was living in Taos County."

**{7}** The Uniform Child-Custody Jurisdiction and Enforcement Act (UCCJEA), NMSA 1978, § 40-10A-101 to -403 (2001), governs our analysis in this matter *See* NMSA 1987, § 40-10A-112(a)(1), (2) (allowing a court of this state to make an initial child-custody determination when New Mexico is the home state and a court of another state does not have jurisdiction); *see also* § 40-10A-102(4) (defining "child-custody proceeding" to include proceedings for "neglect, abuse . . . [and] termination of parental rights"); NMSA 1978, § 32A-1-8(C) (2009) (stating "[t]he [district] court shall have jurisdiction over both parents to determine the best interest of the child and to decide all matters incident to the court proceedings"). "We review the district court's determination [of jurisdiction] by interpreting the UCCJEA, a task we perform de novo." *State of N.M., ex rel. Children, Youth, & Families Dep't v. Donna J.*, 2006-NMCA-023, ¶ 11, 139 N.M. 131, 129 P.3d 167.

**{8}** At the time CYFD filed the First Petition on June 16, 2015, Mother and Child had been residents of Taos County for at least the thirteen previous months. Thus, New Mexico was the home state of Child, pursuant to the UCCJEA, when the First Petition was filed and when the child-custody proceeding commenced. *See* § 40-10A-102(7) (defining "home state" as "the state in which a child lived with parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child-custody proceeding"); *see also* § 40-10A-102(5) (defining "commencement"

as "the filing of the first pleading in a proceeding"). Accordingly, we hold that when the First Petition was filed in June 2015, New Mexico had jurisdiction over Mother and Child.

**{9}** We next consider whether New Mexico retained jurisdiction over Child for purposes of the Second Petition, filed in February 2016. Under the UCCJEA, New Mexico retains "exclusive, continuing jurisdiction over the [child-custody] determination" until:

> (1) [New Mexico] determines that [C]hild, or [C]hild and [Mother] . . . do not have a significant connection with [New Mexico] and that substantial evidence is no longer available in [New Mexico] concerning [C]hild's care, protection, training and personal relationships; or

> (2) [New Mexico] or a court of another state determines that [C]hild [or Mother] . . . do not presently reside in this state.

Section 40-10A-202.

**{10}** Mother argues that the November 2015 order dismissing Child divested the State of New Mexico of jurisdiction over Child's custody determination. We disagree.

**{11}** New Mexico made the initial custody determination during the proceedings stemming from the First Petition. No other state exercised jurisdiction over Child or Mother at any time from the filing of the First Petition in June 2015 to the termination of Mother's parental rights in December 2019. On the contrary, during the pendency of the Second Petition, the "Oregon Circuit Court declined to exercise jurisdiction on the ground that New Mexico [was] the more appropriate forum." The decision of the Oregon court to decline jurisdiction in favor of New Mexico is in accordance with a primary purpose of the UCCJEA. *See Malissa C. v. Matthew Wayne H.*, 2008-NMCA-128, ¶ 25, 145 N.M. 22, 193 P.3d 569 ("Section 40-10A-201(a) of the UCCJEA may be distilled into one primary proposition, which is that a court in a child's home state has jurisdiction to make an initial child-custody determination unless it declines to exercise that jurisdiction on the ground that another state is a more appropriate forum.").

**{12}** Mother contends that, following the Second Petition, Child's physical presence in New Mexico was required for the district court to exercise jurisdiction. Her argument fails. The UCCJEA provides that "[p]hysical presence of, or personal jurisdiction over, a party or a child is not necessary or sufficient to make a child-custody determination." Section 40-10A-201(c). As such, the only criteria we need to consider is whether the Child's custody determination appropriately fell under the UCCJEA. As noted above, it did. "[T]he UCCJEA language specifically requires action by either the home state or another state before exclusive, continuing jurisdiction in the home state ceases." *Donna J.*, 2006-NMCA-023, ¶ 14. This is true even if a party is dismissed from the initial petition or if an original case is replaced by a new case. *See id.* ¶ 15 (noting that the "UCCJEA does not require that the case in which the initial custody order is entered be

ongoing when a later petition is filed"). Here, no other state, including Oregon, exercised jurisdiction over Child's custody determination other than New Mexico. Both the First Petition and Second Petition involved Mother's custody of her children and Mother has not identified any other current or former child-custody proceeding in any other state than New Mexico. We hold that the district court retained jurisdiction over the abuse and neglect proceeding following CYFD's Second Petition.

## II.     There Was Substantial Evidence That Child Was Abused and Neglected

**{13}**     Mother argues that substantial evidence does not support the district court's termination of Mother's parental rights. "Before a court may terminate parental rights based on abuse or neglect, it must find by clear and convincing evidence: (1) that the child was abused or neglected[;] (2) that the conditions and causes of the abuse were unlikely to change in the foreseeable future[;] and (3) that . . . CYFD made reasonable efforts to assist the parent in adjusting the conditions." *State ex rel. Children, Youth & Families Dep't v. Benjamin O.*, 2007-NMCA-070, ¶ 30, 141 N.M. 692, 160 P.3d 601 (alterations, internal quotation marks, and citation omitted). "Clear and convincing evidence means evidence that instantly tilts the scales in the affirmative when weighed against the evidence in opposition and the fact[-]finder's mind is left with an abiding conviction that the evidence is true." *State ex rel. Children, Youth & Families Dep't v. Keon H.*, 2018-NMSC-033, ¶ 37, 421 P.3d 814 (internal quotation marks and citation omitted). We view "the evidence in the light most favorable to the [TPR] judgment" and "will evaluate whether the [district] court could have found by clear and convincing evidence the necessary statutory conditions to termination." *State ex rel. Children, Youth & Families Dep't v. Patricia H.*, 2002-NMCA-061, ¶ 22, 132 N.M. 299, 47 P.3d 859. We will uphold the district court's judgment terminating parental rights when the judgment is supported by substantial evidence. *See id.* "Substantial evidence is relevant evidence that a reasonable mind would accept as adequate to support a conclusion." *Id.* (internal quotation marks and citation omitted).

**{14}**     Mother's arguments on this issue are sparsely developed and she fails to direct our attention to anything in the record that contradicts the district court's findings that Child was abused and neglected. Based on our understanding of Mother's argument, she does not contest the district court's conclusions that CYFD made reasonable efforts or that the situation that led to the abuse and neglect was not likely to change in the foreseeable future. We therefore focus our analysis on the district court's conclusion that Child was abused or neglected. *See State v. Guerra*, 2012-NMSC-014, ¶ 21, 278 P.3d 1031 (explaining appellate courts do no review unclear or undeveloped arguments). Accordingly, we must determine whether there was substantial evidence of a clear and convincing nature demonstrating that Child was abused and neglected.

**{15}**     In the proceedings related to the Second Petition, the district court took judicial notice that it had previously found, in the proceedings related to the First Petition, that Mother had abused and neglected Child. *See City of Aztec v. Gurule*, 2010-NMSC-006, 147 N.M. 693, 228 P.3d 477 ("Our rules of evidence permit trial courts to take judicial notice of 'adjudicative facts,' Rule 11-201(A) NMRA, which are 'simply the facts of the

particular case.' "). Therefore, we examine whether substantial evidence supported the district court's original finding of abuse and neglect. *See State ex rel. Dep't of Hum. Servs. v. Perlman*, 1981-NMCA-076, ¶ 12, 96 N.M. 779, 635 P.2d 588 (holding that "[a] decree . . . terminating [the mother]'s parental rights, based upon findings and conclusions related to [a] void neglect decree, cannot stand"). We conclude that substantial evidence existed.

**{16}**   On August 26, 2015, CYFD presented evidence from Child's older sister K.O, who testified that her Mother "was not constantly abusive . . . just . . . occasionally" abusive. K.O. also stated that Mother yelled at Child and that Child has "probably seen [Mother] hit [her] . . . at least once." At the same hearing, CYFD elicited testimony of Anthony Barajas, a Children's Protective Services investigator in Taos, New Mexico. He testified that upon interviewing K.O. he discovered that Mother would "wake up screaming" at K.O. and would "hit [K.O] with belts and whips." Additionally, Barajas noted that during some of these altercations Child "was present."

**{17}**   The State also presented evidence of neglect. For instance, K.O. testified that Mother failed to seek follow-up medical care with his pediatrician for Child after he contracted Hand, Foot and Mouth Disease. K.O. also testified that Child had not received any of his necessary immunizations as of the time of the August 2016 hearing.

**{18}**   Lastly, CYFD presented testimony from Amy Williams, an expert in early childhood mental health and mental illness. Williams opined that "[Child] has witnessed an awful lot of chaos and verbal aggression and anger which in and of itself is really scary for little children." Williams further highlighted that if Child was "present for those things it would be pretty scary and extremely overwhelming to his system." Williams opined that with those abusive conditions, "you tend to get a lowered immune system in children, it might make it easier for him [Child] to get so incredibly sick and sensitive to hand, foot, and mouth disease, to the point that he got a really high fever and the seizures." She discussed the effects of yelling and screaming on small children noting that it can compromise child development because of the "complex trauma." Williams ended her testimony by opining that Mother emotionally and psychologically abused Child.

**{19}**   We hold that CYFD presented substantial evidence that Child was abused and neglected. *See State ex rel. Children, Youth, & Families Dep't v. Michelle B.*, 2001-NMCA-071, ¶ 17, 130 N.M. 781, 32 P.3d 790 (requiring clear and convincing evidence of a parent's "culpability through intentional or negligent disregard of [the child's] well-being and proper needs").

**III.   Mother Invited Error by Choosing to Proceed Pro Se During the TPR Hearing**

**{20}** Finally, Mother contends she was deprived of due process[1] to put forth a meaningful defense because she was unrepresented by counsel during the TPR hearing.[2] "[I]n passing upon claims that the procedure utilized resulted in a denial of procedural due process, we review such issues de novo." *State ex rel. Children, Youth & Families Dep't v. Ruth Anne E.*, 1999-NMCA-035, ¶ 22, 126 N.M. 670, 974 P.2d 164; *see State ex rel. Children, Youth & Families Dep't v. Mafin M.*, 2003-NMSC-015, ¶ 17, 133 N.M. 827, 70 P.3d 1266 (stating "[t]he question of whether an individual is afforded due process is a question of law that we review de novo").

**{21}** Mother had a statutory basis for appointment of counsel during the TPR hearing. *See* NMSA 1978, § 32A-4-10(B) (2005) ("[C]ounsel shall be appointed for the parent . . . until an indigency determination is made at the custody hearing. Counsel shall also be appointed if, in the court's discretion, appointment of counsel is required in the interest of justice."). The district court complied with Section 32A-4-10(B) by appointing four attorneys to represent Mother over the course of the proceedings. Although Mother was without representation immediately prior to the TPR hearing, after her fourth appointed counsel withdrew, she voluntarily chose to proceed pro se. During a July 2019 hearing, the district court asked Mother "Do you think you and Ms. Musselman [final court appointed attorney] can continue to work or do you think, and I told you at our last hearing this is kind of your last attorney . . . there have been a number of attorneys and at this point my inclination is to allow you to proceed pro se." Mother responded, "We cannot work together any longer and my preference is to work pro se." Highlighting that Mother had a statutory right to counsel, was appointed counsel during the majority of the proceedings, and chose to proceed pro se during the TPR hearing, we conclude that Mother invited the error that led to her appeal on this issue[3]. *See Chris L. v Vanessa O.*, 2013-NMCA-107, ¶ 27, 320 P.3d 16 ("Invited error occurs where a party has contributed, at least in part, to perceived shortcoming in a trial court's ruling and as a result, the party should hardly be heard to complain about these shortcomings on appeal." (alterations, internal quotation marks, and citation omitted)).

## CONCLUSION

**{22}** We affirm.

---

[1]Mother also argues that her right to due process was violated during a June 23, 2015, custody proceeding because she was not able to attend that hearing in person. We have previously addressed this argument and affirmed by order that procedural due process was satisfied at the June 23, 2015, proceeding. *See State ex rel. Children, Youth & Families Dep't v. Katrina B.*, No. A-1-CA-34805 (N.M. Ct. App. Jul. 6, 2015) (expedited appeal and order).

[2]Mother raises two additional procedural due process arguments. First, Mother contends that she could not present an adequate defense during the TPR trial because she did not have an expert witness. Second, Mother argues that the district court violated her procedural due process rights because it "failed to conduct [an] adjudicatory hearing in compliance with . . . Rule 10-343 [NMRA]." Mother raised both issues for the first time in her reply brief on appeal; as such, we decline to address them further. *See State v. Castillo-Sanchez*, 1999-NMCA-085, ¶ 20, 127 N.M. 540, 984 P.2d 786 ("We will not consider arguments raised for the first time in a reply brief.").

[3]CYFD contends that Mother's due process claims were not preserved. Because we conclude that Mother invited the error that led to her appeal on this issue, we need not address whether Mother's due process argument was preserved.

**{23}** IT IS SO ORDERED.

**BRIANA H. ZAMORA, Judge**

**WE CONCUR:**

**JENNIFER L. ATTREP, Judge**

**ZACHARY A. IVES, Judge**